In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2415

ANTHONY DEWALT,

Plaintiff-Appellant,

v.

LAMARK CARTER, CORRECTIONAL OFFICER YOUNG,
CAROL BIESTER, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 98 C 50059--Philip G. Reinhard, Judge.

Submitted July 14, 1999/*--Decided August 11, 2000

   Before HARLINGTON WOOD, JR., COFFEY and RIPPLE, Circuit
Judges.

   RIPPLE, Circuit Judge.  Anthony DeWalt, an
Illinois prisoner proceeding pro se, seeks
compensatory and punitive damages under 42 U.S.C.
sec. 1983 against five individuals employed at
the Dixon Correctional Center ("Dixon") for
alleged violations of his First, Eighth, and
Fourteenth Amendment rights. Mr. DeWalt claims
that various defendants used racially insulting
and sexually explicit language when speaking to
him, engaged in a racially motivated and
retaliatory conspiracy to get him fired from his
prison job, retaliated against him in a variety
of other ways for filing a grievance against a
prison guard, used excessive force in illegally
punishing him, and ignored his complaints of
discrimination and retaliation. The district
court dismissed Mr. DeWalt's complaint for
failure to state a claim. We affirm in part and
reverse in part.

I
BACKGROUND
   Anthony DeWalt's problems at Dixon began on
August 8, 1997, when Correctional Officer Young,
a prison guard, approached him while he was
working at his job cleaning the building that
houses the prison school./1 Officer Young made a
series of sexually suggestive and racially

derogatory comments to him regarding certain female teachers at the prison school. Mr. DeWalt filed a grievance against Officer Young based on the incident. Mr. DeWalt's decision to file the grievance set off a wave of retaliation by the defendants and other prison employees.

During the following week, Officer Young went to Carol Biester, an administrator at the prison school, and suggested to her that Mr. DeWalt was trying to initiate an intimate relationship with a teacher at the prison school. Ms. Biester, in response, instructed Mr. DeWalt in an abrasive and insulting manner not to enter the teacher's classroom.

Shortly thereafter, on August 14, Officer Young ordered Mr. DeWalt to clean the teacher's classroom, and Mr. DeWalt did so. Officer Young, however, submitted a disciplinary report charging Mr. DeWalt with entering the classroom in contravention of Ms. Biester's orders. Based on Officer Young's disciplinary report, Ms. Biester removed Mr. DeWalt from his job. Mr. DeWalt challenged Officer Young's disciplinary report internally, but the prison's Adjustment Committee found Mr. DeWalt guilty of the disciplinary violation on August 26, 1997. As a result, Mr. DeWalt was permanently reassigned from his job at the prison school.

At about the same time Mr. DeWalt lost his prison job, Dan Murray, a prison administrator, took him aside, informed him that he had heard Officer Young's allegations about Mr. DeWalt's interest in the teacher, and proceeded to berate Mr. DeWalt in racially derogatory terms for getting into trouble and for pursuing prison teachers. Several weeks later, Mr. Murray refused to reassign Mr. DeWalt to a new prison job, despite the warden's instructions to do so.

Over the next few weeks, Mr. DeWalt received two more groundless disciplinary reports from other prison staff members who are not defendants in the present case. The prison guard who gave Mr. DeWalt the second of these reports informed Mr. DeWalt that Ms. Biester and Officer Young had enlisted a number of prison staff members to give Mr. DeWalt disciplinary reports whenever possible because Mr. DeWalt had filed a grievance against Officer Young.

Finally, in early November 1997, Correctional Officer Smith, another prison guard, issued Mr. DeWalt a disciplinary report. He informed Mr. DeWalt that he was receiving the disciplinary report because he had filed a grievance against Officer Young and because correctional officers "stick together." R.11. As Mr. DeWalt walked

away, he told Officer Smith that his actions were unprofessional, whereupon Officer Smith jumped up and shoved Mr. DeWalt toward the doorway and into the door frame. Mr. DeWalt suffered bruising on his back where he hit the door frame; the prison medical staff, however, did not note any visible injury and did not order X-rays.

Throughout this time period, Mr. DeWalt wrote several letters to Dixon's warden, Lamark Carter, complaining about several of the incidents described above. Mr. Carter offered Mr. DeWalt a job in another part of the prison; however, it appears that Mr. Carter took no other actions.

Liberally construed, see Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998), Mr. DeWalt's complaint alleges the following claims: (1) that Officer Young and Mr. Murray violated the Eighth and Fourteenth Amendments by using racial epithets and making racially derogatory and sexually explicit statements when speaking to Mr. DeWalt; (2) that Officer Young, acting alone and in conspiracy with Ms. Biester, violated the First and Fourteenth Amendments by taking various actions to have Mr. DeWalt removed from his job at the prison school because of his race and because he had filed a grievance against Officer Young; (3) that Officer Young, Ms. Biester, and Officer Smith violated the First and Fourteenth Amendments by retaliating against Mr. DeWalt for complaining about Officer Young's actions; (4) that Officer Smith violated the Eighth Amendment by using excessive force to impose illegal punishment; (5) that Mr. Carter violated the First, Eighth, and Fourteenth Amendments by failing to remedy or prevent the allegedly illegal actions taken by Officer Young, Ms. Biester, and Mr. Murray; and (6) that Officer Smith violated the Fourteenth Amendment by fabricating disciplinary charges. The district court, addressing some but not all these claims, dismissed Mr. DeWalt's complaint sua sponte in its entirety under 28 U.S.C. sec. 1915(e)(2)(B)(ii) for failure to state a claim. Mr. DeWalt now appeals./2

II
ANALYSIS
A.  Standard of Review

This court has not yet identified the proper standard of review for dismissals under 28 U.S.C. sec. 1915(e)(2)(B)(ii), which provides that a district court must dismiss the case of a plaintiff proceeding in forma pauperis if the action "fails to state a claim on which relief may be granted." See Mathis v. New York Life Ins. Co., 133 F.3d 546, 547 (7th Cir. 1998) (per curiam) (noting that the question of the proper

standard of review is an open one in this circuit). It is well-established, however, that we review de novo dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We see no reason to treat dismissals under sec. 1915(e)(2)(B)(ii) differently. Cf. Sanders v. Sheahan, 198 F.3d 626, 626 (7th Cir. 1999) (reaching the same conclusion with respect to dismissals for failure to state a claim under 28 U.S.C. sec. 1915A(b)(1)). Moreover, the circuits that have addressed this issue agree that de novo review is the proper standard of review. See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 806 (10th Cir. 1999); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam), cert. denied, 525 U.S. 1154 (1999); McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997); Mitchell v. Farcass, 112 F.3d 1483, 1486 (11th Cir. 1997). Accordingly, we conclude that dismissals under sec. 1915(e) (2)(B)(ii) will be reviewed de novo in the same manner as dismissals under Rule 12(b)(6).

In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. See Strasburger v. Board of Educ., 143 F.3d 351, 359 (7th Cir. 1998), cert. denied, 525 U.S. 1069 (1999). A complaint should be dismissed for failure to state a claim only if "no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir.) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)), cert. denied, 525 U.S. 973 (1998). Accordingly, a plaintiff need not plead particular legal theories or particular facts in order to state a claim. See Bennett v. Schmidt, 153 F.3d 516, 518-19 (7th Cir. 1998); Nance, 147 F.3d at 590. All that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (citations and internal quotation marks omitted); see Fed. R. Civ. P. 8(a)(2); Kyle v. Morton High Sch., 144 F.3d 448, 454 (7th Cir. 1998).

B.  Racist and Sexually Explicit Statements

Although the district court did not address specifically Mr. DeWalt's allegations concerning Officer Young's and Mr. Murray's use of sexually explicit language, the district court did explain its rejection of Mr. DeWalt's claim regarding

their use of racially derogatory language. The court reasoned that such language does not deprive a person of any constitutionally protected rights.

Precedent from this circuit as well as others supports the district court's conclusion. The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987); accord Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), clarified on rehearing, 186 F.3d 633 (5th Cir. 1999). Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws./3 See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); Patton, 822 F.2d at 700 (due process); Williams, 180 F.3d at 705-06 (equal protection). See generally Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases). Accordingly, Mr. DeWalt's claims that Officer Young and Mr. Murray violated his Eighth and Fourteenth Amendment rights by directing racially derogatory and sexually explicit language at him were properly dismissed.

C.  Removal of Mr. DeWalt from his Job

The district court rejected Mr. DeWalt's claim concerning the loss of his job at the prison school on two grounds. First, the court noted that Illinois prisoners have no right to hold a particular prison job, or any job at all for that matter. It concluded, therefore, that Mr. DeWalt could not base a sec. 1983 claim on the loss of his prison job. Alternatively, the district court held that Mr. DeWalt could not pursue a sec. 1983 damages claim based on the loss of his prison job because Edwards v. Balisok, 520 U.S. 641 (1997), precludes damages actions challenging disciplinary sanctions that have not been overturned through some other means.

1.

In ruling that Mr. DeWalt could not base a sec. 1983 claim on the loss of a job to which he had no entitlement, the district court collapsed an important distinction between procedural due process claims and other sorts of constitutional claims. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (summarizing Supreme Court precedent on procedural due process claims by prisoners); Vitek v. Jones, 445 U.S. 480, 491-

94 (1980) (recognizing liberty interest arising directly from Due Process Clause); Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974) (recognizing that prisoners might enjoy procedural due process protections and that state law could create protected liberty interests); Board of Regents v. Roth, 408 U.S. 564, 576-77 (1972) (discussing the property interest requirement for procedural due process claims). As the district court recognized, this court, in Wallace v. Robinson, 940 F.2d 243 (7th Cir. 1991) (en banc), determined that neither Illinois law nor the Due Process Clause itself affords prisoners a liberty or property interest in their jobs. Accordingly, to the extent that Mr. DeWalt alleges a procedural due process claim, the district court was correct to dismiss the claim.

Mr. DeWalt alleges more than a procedural due process claim, however. He also alleges a Fourteenth Amendment equal protection claim and a First Amendment retaliation claim, to which the liberty/property interest requirement for procedural due process claims does not apply. See Sandin, 515 U.S. at 487 n.11; Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam). For example, if prison officials were to allocate T.V. time, visitation privileges, prison jobs, or any of the other privileges prisoners enjoy, on an otherwise illegal or discriminatory basis, their actions would be unconstitutional even though such privileges do not constitute liberty or property interests. See, e.g., Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996) (retaliatory transfer); Black v. Lane, 824 F.2d 561, 562 (7th Cir. 1987) (racial discrimination with respect to prison job); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. Unit B 1980) (per curiam) (same). Accordingly, the fact that Mr. DeWalt does not have a liberty or property interest in his former prison job does not foreclose his equal protection and retaliation claims arising from the loss of that job.

2.

Thus, we are faced squarely with the issue whether Mr. DeWalt may bring his sec. 1983 action (based on his equal protection and retaliation claims) when the underlying disciplinary sanction has not been overturned or invalidated. Today, we join the Second Circuit and hold that a prisoner may bring a sec. 1983 claim "challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal habeas corpus." Jenkins v. Haubert, 179 F.3d 19, 21 (2d Cir. 1999).

a. Statutory framework

Because Mr. DeWalt's claim involves both sec. 1983 and the federal habeas statute, we begin our analysis by looking at both statutes. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. sec. 1983. By its terms, sec. 1983 does not require a plaintiff to exhaust state remedies before bringing a cause of action. This requirement, however, was imposed statutorily for prisoners in 1996, when Congress enacted the Prison Litigation Reform Act ("PLRA"). That Act prohibits a prisoner from bringing a sec. 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. sec. 1997e(a).

The federal habeas statute, 28 U.S.C. sec. 2254, provides an avenue to challenge unconstitutional confinement by state authorities. It states in relevant part:

(a)  The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. sec. 2254.

A tension between these two statutes arises when

a prisoner, one "in custody," challenges an aspect of his confinement not through the tool of habeas corpus, but through a sec. 1983 action, either for injunctive relief or damages. Because the statutes do not address their overlap and resulting conflict, the task of discerning congressional intent has fallen on the courts. We turn now to that case law.

b.   Supreme Court case law

   The Supreme Court first considered whether sec. 1983 could be used to bring actions relating to a plaintiff's conviction or sentence in Preiser v. Rodriguez, 411 U.S. 475 (1973). In Preiser, several prisoners sought injunctive relief under sec. 1983 to have restored good time credits that they had lost as a result of a prison disciplinary action. The Court concluded that sec. 1983 could not be used to pursue such relief because Congress had designated the federal habeas statute as the exclusive federal remedy for state prisoners who challenge the fact or duration of their confinement and seek immediate or speedier release. See id. at 489-90. "Congress," it stated, "has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of sec. 1983." Id. at 490. The Court also clarified when sec. 1983 relief would be available to prisoners: "[A] sec. 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Id. at 499.

   Just over twenty years later, in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court took up a question left unanswered by Preiser: whether a plaintiff may bring a sec. 1983 claim for damages that challenges the underlying conviction or sentence. The Court analogized such claims to malicious prosecution actions and opined that a sec. 1983 action should not be available to challenge a conviction or sentence unless the conviction or sentence already has been invalidated. See id. at 484-87. Accordingly, the Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a sec. 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called

into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. sec. 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under sec. 1983.

Id. at 486-87 (footnote omitted).

In his concurring opinion, Justice Souter noted the difficulty presented by such a broad reading of Heck. However, he concluded that the Court's opinion could be read "as saying nothing more than that now, after enactment of the habeas statute and because of it, prison inmates seeking sec. 1983 damages in federal court for unconstitutional conviction or confinement must satisfy a requirement analogous to the malicious-prosecution tort's favorable-termination requirement." 512 U.S. at 500. "That," continued Justice Souter,

would be a sensible way to read the opinion, in part because the alternative would needlessly place at risk the rights of those outside the intersection of sec. 1983 and the habeas statute, individuals not "in custody" for habeas purposes. If these individuals . . . were required to show the prior invalidation of their convictions or sentences in order to obtain sec. 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides sec. 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

Id./4

Edwards v. Balisok, 520 U.S. 641 (1997), extended the Heck rule to sec. 1983 damages claims challenging the loss of good time credits in prison disciplinary actions (when the fact or duration of confinement was implicated). Making no distinction between claims challenging a conviction or sentence and claims challenging prison disciplinary decisions, the Court concluded that a state prisoner's claim for damages based on allegations that necessarily implied the invalidity of the punishment imposed (i.e., loss of good time credits) was not cognizable under sec. 1983 because the prison disciplinary decision had not been invalidated. See id. at 648.

Spencer v. Kemna, 523 U.S. 1 (1998), is the Supreme Court's most recent pronouncement in this

arena. In that case, the Court ruled that the expiration of a habeas petitioner's sentence rendered moot a challenge to the revocation of his parole since the action no longer presented an Article III case or controversy. Concerned with the fact that, as a consequence of the Court's ruling, the petitioner may have lacked a remedy for any unconstitutional actions taken in revoking his parole, the concurring and dissenting Justices in Spencer took the opportunity to clarify their positions regarding the scope of the Heck rule. Justice Souter, joined by Justices O'Connor, Ginsburg, and Breyer, wrote: "The better view, then, is that a former prisoner, no longer 'in custody,' may bring a sec. 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Id. at 990 (Souter, J., concurring). Justice Ginsburg reiterated her agreement in her separate concurrence: "I have come to agree with Justice Souter's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within sec. 1983's 'broad reach.'" Id. (Ginsburg, J., concurring). Justice Stevens also accepted Justice Souter's position: "Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under sec. 1983." Id. at 992 n.8 (Stevens, J., dissenting).

c. Court of Appeals case law

In Jenkins v. Haubert, 179 F.3d. 19 (2d Cir. 1999), the Second Circuit faced the task of applying Preiser and its progeny to a prisoner's challenge to conditions of his confinement, but not its fact or duration. The prisoner in Jenkins claimed violations of his constitutional rights with respect to prison disciplinary hearings. As a result of the hearings, Jenkins was sentenced to thirty days "keeplock," a type of administrative detention in which the prisoner is confined to his cell. Jenkins then filed a sec. 1983 action challenging his hearings. The district court held that Jenkins' sec. 1983 action was not cognizable under the Supreme Court's decision in Edwards because the disciplinary penalty had not been overturned. The Second Circuit reversed. After carefully reviewing both the statutes and the Supreme Court case law, the Second Circuit concluded that "nothing in Supreme Court precedent requires that the Heck rule be applied to a challenge by a prisoner to a term of disciplinary segregation.

Moreover, we find that to apply the Heck rule in such circumstances would contravene the pronouncement of five Justices that some federal remedy--either habeas corpus or sec. 1983-- must be available." Id. at 27.

d. Application

We believe the Second Circuit appropriately reconciled the statutory schemes and therefore adopt the reasoning of the Second Circuit as it applies to Mr. DeWalt's claims regarding his conditions of confinement. First, we agree that the Supreme Court never has addressed whether Heck's favorable-termination requirement bars a prisoner's challenge under sec. 1983 to an administrative sanction that does not affect the length of confinement. In Preiser, the Court clearly limited its holding to actions involving the "heart" of habeas--the fact or duration of imprisonment. The Court in Heck characterized the case as lying at "the intersection" of sec. 2254 and sec. 1983, and held that "[e]ven a prisoner who has fully exhausted available state remedies" could not bring a cause of action under sec. 1983 "unless . . . the conviction or sentence is . . . invalidated . . . by the grant of a writ of habeas corpus." Id. at 489. The court in Edwards simply extended Heck to administrative proceedings that affect the length of confinement and, therefore, for which habeas is available. Finally, Spencer speaks only to the effect of subsequent release on a habeas petition; the discussion of sec. 1983 is limited to dictum and the concurring opinions. The Court simply never has "announced that the Heck rule bars a prisoner's challenge under sec. 1983 to an administrative or disciplinary sanction that does not affect the overall length of confinement." Jenkins, 179 F.3d at 27.

Furthermore, we, like the Second Circuit in Jenkins, are hesitant to apply the Heck rule in such a way as would contravene the pronouncement of five sitting Justices. See id. The concurring and dissenting opinions in Spencer reveal that five justices now hold the view that a sec. 1983 action must be available to challenge constitutional wrongs where federal habeas is not available. Although this perspective originally had been a minority view, it is not after Spencer. Justice Ginsburg has "come to agree with Justice Souter's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within sec. 1983's 'broad reach.'" Spencer, 523 U.S. at 21 (Ginsburg, J., concurring)./5

In the absence of binding Supreme Court

precedent, and in light of the guidance offered by the concurrences in Heck and Spencer, we turn to Mr. DeWalt's claims. Unlike the plaintiffs in Preiser, Heck, and Edwards, Mr. DeWalt's case does not "lie at the intersection" of sections 2254 and 1983. Mr. DeWalt does not challenge the fact or duration of his confinement, but only a condition of his confinement--the loss of his prison job. Consequently, under our precedent, Mr. DeWalt may not pursue a habeas action. See Pischke v. Litsher, 178 F.3d 497, 500 (7th Cir.) (holding that habeas is the proper vehicle for presenting a claim "if but only if the prisoner is seeking to 'get out' of custody in some meaningful sense"), cert. denied, 120 S. Ct. 380 (1999); Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991) (stating that if a prisoner is challenging "merely the conditions of his confinement his proper remedy is under the civil rights law"). Because federal habeas relief is not available to Mr. DeWalt, the language of sec. 1983 and the Court's decision in Preiser dictate that he be able to proceed on his sec. 1983 action. In Preiser, the Court held that the more specific federal habeas statute must necessarily supersede the more general sec. 1983 statute to effectuate "explicit congressional intent." 411 U.S. at 489; see also Heck, 512 U.S. at 497-98 (Souter, J., concurring). In this case, where habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under sec. 1983. Consequently, Mr. DeWalt may proceed with his sec. 1983 action without first seeking to invalidate the state court action through habeas.

We are aware that our decisions in Anderson v. County of Montgomery, 111 F.3d 494 (7th Cir. 1997), and Stone-Bey v. Barnes, 120 F.3d 718 (7th Cir. 1997), precluded plaintiffs from pursuing sec. 1983 actions when federal habeas was not available or when the prisoner had not first availed himself of that option. However, we note that both of these cases preceded Spencer. Indeed, our more recent cases have questioned the viability of Anderson and Stone-Bey in light of the Justices' reluctance to apply the Heck rule to situations in which habeas relief is not available. See Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir.) ("[T]here is probably an exception to the rule of Heck for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction."), cert. denied, 120 S. Ct. 411 (1999); Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999) ("With Carr unable to get the disciplinary sanction reversed, five Justices would not consider the sanction a bar to a section 1983 suit even though that suit calls into question the validity of the sanction.");

Sylvester v. Hanks, 140 F.3d 713, 714 (7th Cir. 1998) (questioning whether Heck would preclude a sec. 1983 action to review placement in segregation given that "few states afford collateral review of prison disciplinary hearings"). Our decision today necessitates that we overrule Anderson and Stone-Bey to the extent they take the contrary position./6

To summarize, we hold today that the unavailability of federal habeas relief does not preclude a prisoner from bringing a sec. 1983 action to challenge a condition of his confinement that results from a prison disciplinary action.

3.

Having determined that a dismissal is not justified on either of the grounds the district court gave for dismissing Mr. DeWalt's claims regarding the loss of his prison job, we turn to whether Mr. DeWalt's allegations state a claim on which relief can be granted. As noted above, Mr. DeWalt alleges that Officer Young, with help from Ms. Biester, worked to remove him from his prison job because of his race and because he filed a grievance against Officer Young.

We consider Mr. DeWalt's allegations of racial discrimination first. Unless it is narrowly tailored to serve a compelling state interest, racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment. See City of Richmond v. J.A. Croson Co., 488 U.S. 469, 493-94 (1989). A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently than persons of a different race and that the state actor did so purposefully. See Washington v. Davis, 426 U.S. 229, 239-42 (1976); Indianapolis Minority Contractors Ass'n, Inc. v. Wiley, 187 F.3d 743, 752 (7th Cir. 1999).

Although his complaint is less than pellucid, Mr. DeWalt certainly alleges that he was discriminated against because of his race, and nothing in his complaint negates the possibility that he could establish an equal protection violation. We conclude that Mr. DeWalt's allegation that he was removed from his job because of his race states a claim on which relief can be granted.

We come to the same conclusion with regard to Mr. DeWalt's allegations of retaliation. An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977);

Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir. 1984), limited on other grounds, Salazar v. City of Chicago, 940 F.2d 233, 240-41 (7th Cir. 1991). Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. See Preiser, 411 U.S. at 493. Thus, a prison official may not retaliate against a prisoner because that prisoner filed a grievance. See Babcock, 102 F.3d at 274-75; Black, 22 F.3d at 1402-03; see also Higgason, 83 F.3d at 810 (retaliation for filing lawsuit); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (same). This is so even if the adverse action does not independently violate the Constitution. See Babcock, 102 F.3d at 275. "To state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." Black, 22 F.3d at 1399 (citations and internal quotation marks omitted).

The allegations made in Mr. DeWalt's complaint certainly present a chronology from which retaliation can be inferred. According to Mr. DeWalt, it was only shortly after he filed a grievance against Officer Young that Officer Young and Ms. Biester acted to have him removed from his prison job. Moreover, Mr. DeWalt can point to statements by two other prison staff members admitting that there was a concerted effort by certain prison staff, including Officer Young and Ms. Biester, to retaliate against Mr. DeWalt. Thus, we conclude that Mr. DeWalt's allegation that he was removed from his job in retaliation for filing a grievance states a claim on which relief can be granted.

D. Retaliation Against Mr. DeWalt for Reporting  Misconduct

Mr. DeWalt also alleges that Officer Young, Ms. Biester, and Officer Smith took various other actions (filing false disciplinary reports, encouraging others to do the same, attempting to have Mr. DeWalt transferred to another prison) in retaliation for his filing of a grievance against Officer Young. The district court, however, did not specifically consider these allegations. Our review of the allegations persuades us that Mr. DeWalt has stated sufficiently a claim for retaliation.

Again, Mr. DeWalt's allegations adequately set forth a chronology of events from which retaliation may be inferred. See Black, 22 F.3d at 1399. To begin with, the alleged retaliatory actions began almost immediately after Mr. DeWalt filed the grievance against Officer Young,

suggesting a causal relationship. Likewise, Mr. DeWalt's claim that a prison guard informed him that several staff members, including Officer Young and Ms. Biester, were plotting to report him for disciplinary violations whenever possible also supports his claim. The same is true of Mr. DeWalt's allegation that, on several occasions in the weeks and months after he filed the grievance against Officer Young, he received unjustified disciplinary reports from other staff members, culminating in the incident involving Officer Smith in November. That incident, too, suggests Mr. DeWalt was the subject of retaliation in that Officer Smith allegedly told Mr. DeWalt that he was giving him a disciplinary report precisely because Mr. DeWalt had filed a grievance against Officer Young. Accordingly, we conclude that it would be improper to dismiss Mr. DeWalt's retaliation claims for failure to state a claim.

E.  Officer Smith's Use of Force

   The district court dismissed Mr. DeWalt's excessive force claim because Mr. DeWalt's complaint did not establish that Officer Smith's use of force (shoving Mr. DeWalt into a door frame) was motivated by something other than a good faith effort to maintain or restore discipline. Accordingly, the court reasoned, Mr. DeWalt had failed to show that the force Officer Smith employed was excessive. We agree that Mr. DeWalt's excessive force claim must be dismissed, though for slightly different reasons than those articulated by the district court.

   The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). What constitutes an "unnecessary and wanton infliction of pain," however, "varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5. In excessive force cases, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. A court should examine a variety of factors in conducting this inquiry, including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. See id. at 7. With regard to the last of these factors, while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force. See id. at 9-10. Thus, not

every push or shove by a prison guard violates a prisoner's constitutional rights. See id. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of de minimis use of force that does not constitute cruel and unusual punishment. Compare Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994) (pouring a bucket of water on prisoner and causing the bucket to hit him in the head characterized as de minimis), with Thomas v. Stalter, 20 F.3d 298, 301-02 (7th Cir. 1994) (punching a prisoner with a closed fist, while held down by other officers, qualified as more than de minimis). The shove was a single and isolated act, unaccompanied by further uses of force. Moreover, the bruising Mr. DeWalt allegedly suffered does not appear to have been particularly serious. Although we certainly do not condone the unjustified use of force by prison guards, Mr. DeWalt's allegations regarding Officer Smith's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment. Accordingly, the district court did not err in dismissing Mr. DeWalt's excessive force claim.

F.  Warden Lamark Carter

The district court did not specifically address Mr. DeWalt's claim against Mr. Carter, but it is clear that his claim against Mr. Carter was properly dismissed. Mr. DeWalt's claim, that Mr. Carter failed to remedy or prevent the illegal actions taken by Officer Young, Ms. Biester, and Mr. Murray, is, at bottom, a claim that Mr. Carter failed to protect Mr. DeWalt from, and therefore condoned, the discrimination and retaliation he allegedly experienced. See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995); see also Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1189-92 (7th Cir. 1986) (Posner, J., concurring)./7

To succeed on his claims, Mr. DeWalt must prove that Mr. Carter acted intentionally, or at least with deliberate indifference. See Babcock, 102 F.3d at 275; Nabozny, 92 F.3d at 453-54. In his complaint, however, Mr. DeWalt specifically alleges that Mr. Carter acted negligently. Negligence, even gross negligence, does not rise to the level of deliberate indifference, see Nabozny, 92 F.3d at 454, and therefore does not satisfy the state of mind requirement for either of the constitutional violations Mr. DeWalt alleges. Cf. Farmer v. Brennan, 511 U.S. 825, 833-38 (1994) (discussing deliberate indifference in the Eighth Amendment context). In fact, an allegation of negligence is inconsistent with the

claims Mr. DeWalt pursues and will support a dismissal for failure to state a claim. Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1429 (7th Cir. 1996). Accordingly, because Mr. DeWalt alleges Mr. Carter acted negligently, Mr. DeWalt's claim against Mr. Carter was properly dismissed./8

Conclusion

   For the foregoing reasons, we affirm in part and reverse and remand in part the judgment of the district court.

AFFIRMED in part, REVERSED and REMANDED in part

/* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2). Only the appellant has filed a brief because this court previously had granted a motion for an order of non-involvement based upon lack of service in the trial court. The defendants-appellees further declined our invitation to submit a brief.

/1 The facts here and throughout the opinion are taken from Mr. DeWalt's complaint and materials attached to it. We accept them as true and construe them in the light most favorable to Mr. DeWalt. See Hentosh v. Herman M. Finch Univ. of Health Sciences/ The Chicago Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999).

/2 Mr. DeWalt has abandoned his claim that Officer Smith fabricated a disciplinary report because he failed to address it in his appellate brief. See Duncan v. State of Wisconsin Dep't of Health & Family Servs., 166 F.3d 930, 934 (7th Cir. 1999). We also decline to review an Eighth Amendment claim Mr. DeWalt raises for the first time on appeal regarding the alleged failure of Officer Smith and another officer to provide him with medical care after Officer Smith shoved him. See Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997).

/3 This does not mean, however, that the use of racially derogatory language is without legal significance. Such language is strong evidence of racial animus, an essential element of any equal protection claim. See Williams, 180 F.3d at 706; Bell v. City of Milwaukee, 746 F.2d 1205, 1259 (7th Cir. 1984). Thus, although the use of racially derogatory language, by itself, does not violate the Constitution, it can be quite important evidence of a constitutional violation.

/4 Justice Scalia responded to Justice Souter by stating that "the principle barring collateral attacks--a longstanding and deeply rooted feature of both the common law and our own jurisprudence--is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." Id. at 490 n.10. However, "the fortuity" of release was not at issue in Heck.

/5 We note that the Supreme Court has expressly disapproved of the practice of relying on statements in separate opinions to determine whether a case has been overruled. See Agostini v. Felton, 521 U.S. 203, 217 (1997); cf. State Oil v. Khan, 522 U.S. 3, 20 (approving this court's decision not to treat a case as overruled despite the weakening of its foundation). Here, however, we rely on separate opinions not to overrule precedent, but to help guide us in deciding an open question.

/6 This opinion has been circulated to all judges in active service under the provisions of Circuit Rule 40(e). No judge in active service favored a rehearing en banc.

/7 Mr. DeWalt's claim encompasses two distinct constitutional violations. On the one hand, to the extent Mr. Carter failed to protect Mr. DeWalt from discrimination, Mr. DeWalt's claim is an equal protection claim requiring him to show that Mr. Carter purposefully discriminated against him based on his membership in a definable class, namely, based on his race. See Indianapolis Minority Contractors, 187 F.3d at 752; Nabozny v. Podlesny, 92 F.3d 446, 453-54 (7th Cir. 1996). On the other hand, to the extent Mr. Carter failed to protect Mr. DeWalt from retaliation, Mr. DeWalt's claim is a retaliation claim requiring him to prove that Mr. Carter purposefully retaliated against him because he exercised a constitutionally protected right, namely, because he filed grievances complaining of his mistreatment. See Mt. Healthy, 429 U.S. at 287; Babcock, 102 F.3d at 275.

/8 Mr. DeWalt also suggests that Mr. Carter failed to remedy or protect him from certain Eighth Amendment violations by Officer Young, Ms. Biester, and Mr. Murray. Because Mr. DeWalt cannot state an Eighth Amendment claim against any of these defendants, however, we will not address this possible claim. In any event, such a claim would fail for the same reason his other claims against Mr. Carter fail. See Farmer, 511 U.S. at 833-38 (negligence insufficient to state Eighth Amendment claim).