**Lennie PERRY, Plaintiff–Appellant,**

v.

**S. OLTMANS, et al., Defendants–Appellees.**

No. 01–3775.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 2003.

Decided July 15, 2004.

James M. Ellis, Abram I. Moore, Bell, Boyd & Lloyd, Chicago, IL, for Plaintiff–Appellant.

Brian F. Barov, Office of the Attorney General, Chicago, IL, for Respondent.

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Illinois inmate Lennie Perry filed this suit under 42 U.S.C. § 1983, alleging that various prison officials subjected him to unjustified searches on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court, acting *sua sponte* under 28 U.S.C. § 1915(e)(2), dismissed his complaint for failure to state a claim. This court appointed counsel to represent Perry. With that assistance, Perry argues on appeal that his complaint did state a claim and that, even if it did not, the district court should have given him notice and an opportunity to amend his complaint before dismissing it. We agree that it was premature to dismiss Perry's complaint, and thus we reverse and remand for further proceedings.

### I

The parties dispute the circumstances surrounding the allegedly discriminatory incidents, but in analyzing a dismissal under § 1915(e)(2) this court accepts as true

all well-pleaded facts alleged in the complaint and draws all inferences in Perry's favor. *Wynn v. Southward*, 251 F.3d 588, 591–92 (7th Cir.2001) (per curiam). Accordingly, we recite the facts as Perry describes them. In February 2000, while Perry was an inmate at Dixon Correctional Facility, Sergeant Oltmans (whose first name we have not found in the necessarily sparse record now before us) conducted a routine shakedown of Perry's cell and confiscated a radio belonging to Perry and gang literature belonging to his cellmate. Perry was not present for the shakedown and so did not either confirm or deny that the contraband was his property. Nevertheless, Perry received a disciplinary report for possessing contraband; his cellmate was not written up at all. In his brief Perry contends—without elaboration—that his "claim of discrimination is based on the fact that, contrary to prison regulations, his cellmate was not punished for the same incident." Perry received a one-month class demotion for possessing an illegally altered radio and prohibited gang literature.

The next month Perry experienced another allegedly discriminatory search at Dixon. On March 25 he was in an authorized area of the prison yard waiting to meet a prospective cellmate. He was approached by Officer Newstrand, who accused Perry of being in an unauthorized area and then conducted a shakedown. Upon discovering that Perry was carrying several packs of cigarettes—Perry contends that his current cellmate had been stealing his belongings when he left his cell—Officer Newstrand took the cigarettes but left without writing a disciplinary report. Not until he was called for a hearing on the matter did Perry first see the report. Officials provided him with a copy of the report at the hearing, which they then postponed to give Perry a chance to prepare his defense.

At the disciplinary hearing, Officer Newstrand testified that during the shakedown Perry admitted that he intended to trade the cigarettes with another inmate in exchange for artwork and that Newstrand gave Perry a copy of the disciplinary report at the time of the violation. The Conduct Adjustment Board found Perry guilty of "unauthorized movement," "trading and trafficking," and "aiding and abetting, attempt, solicitation, or conspiracy," and revoked his yard privileges for 20 days. In his complaint Perry alleged that the shakedown in the prison yard was part of a policy by Officer Newstrand of "singl[ing] out blacks to harass in a discriminatory behavior" and that he "never stop[ped] white inmates to shake them down." Perry also alleged that this policy was instituted with "malice and deliberate indifference."

In dismissing Perry's complaint for failure to state a claim, the district court concluded that it did not see "any discriminatory intent on the part of the officers writing the disciplinary reports." With regard to the claim about the shakedown at Perry's cell, the district court verified through the Department of Corrections' website that both Perry and his cellmate were African–American. In those circumstances, the court concluded, Sergeant Oltmans's decision to give only Perry a disciplinary report could not have been race-related. With regard to Perry's claim about the shakedown in the prison yard, the district court reasoned that Perry failed to state a claim because he did not allege "that he was singled out from a group of inmates of another race for the shake down" and in fact admitted that he was "standing alone in an unauthorized area" when the shakedown occurred. Thus the district court determined that Perry could not show that the officials had treated him differently than members of a

different race. The defendants were not served in the district court and were granted an order of non-involvement by this court, but following appointment of counsel for Perry the state filed a responsive brief at this court's request.

## II

On appeal Perry has abandoned his argument about the shakedown at his cell. He argues only that his allegations about the shakedown in the prison yard stated a claim for an equal protection violation. Perry contends that the district court "erred in its holding that [he] was required to claim that he 'was singled out from a group of inmates of another race for the shake down.'" All that had to be alleged, in his view, was that "Officer Newstrand treated him differently than persons of a different race and that he did so purposefully"; it was unnecessary for him to go further and put into the complaint facts about "[w]hether Officer Newstrand actually employ[ed] such a policy or whether Officer Newstrand's search of Perry was premised on this alleged policy." Further, Perry argues, when the district court concluded that he was standing in an unauthorized area of the prison yard at the time of the search, it made an impermissible credibility determination.

This court reviews *de novo* a dismissal for failure to state a claim under § 1915(e)(2). *DeWalt v. Carter,* 224 F.3d 607, 611–12 (7th Cir.2000). Discrimination between prisoners on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment, subject to whatever justifications might be acceptable under the standards set forth in *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and other relevant decisions of the Supreme Court. Because "there are no special pleading rules for prisoner civil rights cases," a complaint

should not be dismissed if it specifies "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002). A prisoner need not plead facts or legal theories. *Id.;* see also Federal Rule of Civil Procedure 8(a)(2); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). And if a prisoner proceeds *pro se*—as Perry did in the district court—this court construes his complaint liberally. *Wynn,* 251 F.3d at 592.

■ The state's *amicus* brief concedes that the allegations in Perry's complaint are sufficient to state a claim and thus, if that were the only pertinent issue, that the district court improperly dismissed Perry's complaint. We agree. Perry alleged that the search in the prison yard was part of a policy by Officer Newstrand of "singl[ing] out blacks to harass in a discriminatory behavior [*sic* ]," that Officer Newstrand acted "with malice and deliberate indifference," and that Officer Newstrand "never stops white inmates to shake them down." Because these details were sufficient to alert the named officials that Perry sought to charge them with having a policy that relied on race to determine frequency of searches, Perry's complaint satisfies federal notice pleading standards. The facts that the district court cited in dismissing the complaint—that Perry was in an unauthorized area at the time of the search and that he was standing alone—do not "negate[ ] the possibility that he could establish an equal protection violation." *DeWalt,* 224 F.3d at 618.

■ The state argues, however, that the district court was right to dismiss Perry's complaint because Perry failed to exhaust

his administrative remedies before filing suit. In recent years, however, this court has counseled against dismissing prisoner suits for failure to exhaust administrative remedies unless the defendants have pleaded the defense or unless the existence of the defense "is so plain from the face of the complaint that the suit can be regarded as frivolous." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002). The first of these reasons is unavailable to the defendants because they were never served in the district court and naturally never filed an answer asserting any defense.

Although it is a close call, in our view the second reason is similarly inapplicable to Perry's case. The state asserts that it is plain from the face of Perry's grievances that he never gave "prison officials any notice that he was claiming that he was subject to racial discrimination," but it appears to us that the relevant grievances may not need to be read so narrowly. As Perry pointed out in his reply brief, his grievances included allegations of "bias" and claims that prison officials "totally disregard the rules." We make no definitive ruling on the point at this juncture. We note only that while a fuller record may show that those allegations were not sufficient to alert the prison "to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002), on the other hand they may have sufficed. The record in its current form is insufficient for us—and was insufficient for the district court—to determine whether dismissal for failure to exhaust was required. See *Walker*, 288 F.3d at 1010 (reversing dismissal because "the judge when she ruled did not have enough information to enable her to determine whether the plaintiff had exhausted his administrative remedies").

### III

In light of our decision, we do not reach Perry's alternative argument that he was denied due process when the district court dismissed his complaint without giving him an opportunity to amend. Perry's complaint stated a claim for a violation of equal protection, and it was not so obviously barred by a failure to exhaust that the district court's dismissal can be affirmed on that alternative ground. The case is therefore REVERSED and REMANDED for further proceedings consistent with this order.