NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 19, 2007[*]
Decided December 26, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 07-2083

| | |
|---|---|
| DEBRA L. THOMAS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of |
| | Indiana, Evansville Division |
| *v.* | |
| | No. 02 C 24 |
| EVANSVILLE-VANDERBURGH | |
| SCHOOL CORP., et al., | Larry J. McKinney, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

This appeal concerns the measures taken by a public elementary school's teachers, counselors, principal, and nurse in response to a student's claims that her mother was abusing her. The mother, Debra Thomas, seeks relief under 42 U.S.C. § 1983, contending that school officials deprived her of her constitutional rights to equal protection under the law by falsely reporting that she had abused her daughter, Marteisha Mosley. Thomas further contends that, in meeting regularly with Marteisha without Thomas's knowledge, a school counselor deprived Thomas

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

of her substantive due process right to direct the upbringing of her child.  And she argues that school officials have since retaliated against her for complaining about their handling of Marteisha's situation by rejecting her request to enroll her other children at the school.  The district court granted summary judgment for the school and its officials, and Thomas appeals.  We affirm.

We recite the facts in the light most favorable to Thomas.  Between January 1998 and March 2000, Marteisha was enrolled at Lodge Elementary School in Evansville, Indiana.  During that period, members of the school staff—teacher Debra Kasacavage, nurse Marilyn Wright, principal Pat Loge, and guidance counselor Thomas Higgs—reported to Child Protective Services (CPS) ten incidents of Thomas's suspected abuse of Marteisha.  Eight of the reports related that Marteisha had told a staff member that her mother had slapped her, struck her with an electrical cord, or whipped her with a switch.  CPS confirmed that two of those reports were substantiated—the reports on March 25 and December 8, 1998, both of which included observations of bruises and welts on Marteisha's body.  The CPS deemed unsubstantiated the other six reports of physical abuse.  Principal Loge filed the two remaining reports—one in 1998 and the other in 2000.  In the first, she reported that Marteisha rode a city bus alone to her babysitter; in the second, she reported that Thomas had called the school and threatened to kill her daughter.  Those reports also were deemed unsubstantiated.  But the CPS, which has a procedure for investigating whether a report is false, did not initiate that procedure with respect to any of the unsubstantiated reports.  At no point did anyone remove Marteisha from Thomas's custody, though the CPS did send police officers to her home in response to Loge's report that Thomas had threatened to kill Marteisha.

During this period, teachers, school administrators and other personnel frequently would call upon Sally Kivett, a special concerns counselor at the school, to take Marteisha out of class to discuss her difficulties functioning and performing at school.  It is undisputed that Kivett did not inform Thomas of her conversations with Marteisha until February 29, 2000.  On that day Kivett met with Thomas, Marteisha's father, principal Loge, and guidance counselor Higgs, to discuss Marteisha's academic and behavioral issues.  During the conference, Kivett related to Thomas, who is African-American, that Marteisha had told her that Thomas had called Marteisha a "bitch" and threatened, "Do bad, and I'll hit you like a nigger in the street."  Thomas denies that she ever said those words to Marteisha.  Following the conference, on March 1, 2000, Kivett called CPS to discuss her concerns about Thomas's treatment of Marteisha.  She did not, however, report that Thomas had committed child abuse or neglect.

Two years later, Thomas initiated this lawsuit against the school and its officials.  (She also unsuccessfully sued CPS officials in a separate lawsuit. *Thomas*

*v. Starks*, 159 Fed. App'x 716 (7th Cir. 2005) (unpublished order).) In addition to her claims that school officials had falsely reported child abuse and interfered with her parental rights by privately meeting with her daughter, Thomas alleged in her third amended complaint that the school had not allowed her to enroll her younger children at Lodge in retaliation for her public complaints about the school. After nearly three years of litigation, the district court granted the school's motion for summary judgment.

Thomas, who was represented by appointed attorneys in the district court, proceeds *pro se* on appeal. She contends that the district court should have allowed her to proceed to trial on her equal protection claims, her due process claim, and her First Amendment retaliation claim. She also asserts that the court committed various procedural errors. We address each of her contentions in turn.

Thomas first argues that the district court erred in concluding that no reasonable jury could find that school officials discriminated against her on the basis of her race, in violation of her right to equal protection under the law. To survive summary judgment, Thomas had to adduce sufficient evidence from which a jury could conclude that the school officials' actions had a discriminatory effect and were motivated by a discriminatory purpose. *See Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). Thomas had to come forward with some evidence that she was treated differently than similarly situated parents who were not African-American, and that the school officials filed the reports at least in part because of her race. *See id.* at 636, 645. She did neither. Thomas did not identify a single similarly situated parent, nor has she identified any credible evidence to rebut the officials' affidavit testimony that they had made the reports in good faith. Indeed, Thomas has not come forward with *any* evidence that school officials were motivated by her race. The only evidence that could possibly hint that Thomas's race was considered is that Kivett used the word "nigger" in repeating Thomas's alleged threat to hurt Marteisha. Although we have said that the use of racial slurs can be strong evidence of racial animus, *DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir. 2000), Kivett was reporting verbatim what Marteisha had told her. That indirect use of the slur, standing alone, is simply not enough evidence to support an inference of discriminatory intent. And, in any event, Kivett never filed a report with CPS.

Thomas also argues that the district court erred in rejecting her claim that the school engaged in the widespread practice of discriminating against African-American parents. To survive summary judgment on that claim, Thomas had to produce enough evidence from which a jury could conclude that such discrimination was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). Rather than showing a pervasive practice of discrimination, though,

Thomas relies entirely on her own experiences—which, as we explained, she has not shown were discriminatory. And although she avers that she has personal knowledge of African-American parents experiencing similar treatment by school officials, she does not identify those persons, nor has she identified any examples of discriminatory treatment.

Thomas next argues that the district court erred in concluding that school officials were entitled to qualified immunity on Thomas's claims that counselor Kivett's private discussions with Marteisha violated Thomas's substantive due process right to direct the upbringing of her daughter. School officials were entitled to qualified immunity if the facts, viewed in the light most favorable to Thomas, show that Kivett's conduct did not violate a constitutional right. *See Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007). If they did show a violation, we would next ask whether the right was clearly established at the time. *Id.*

We need not proceed to the second step because Thomas has not shown that counselor Kivett's private discussions with Marteisha violated Thomas's constitutional rights. We agree that Thomas has a fundamental right, secured by the due process clause, to direct the upbringing and education of her child. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (collecting cases). That right was articulated in *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925), where the Supreme Court declared unconstitutional an Oregon law requiring parents to send their children to public schools, and in *Meyer v. Nebraska*, 262 U.S. 390 (1923), where the Court held that a law restricting the instruction of foreign languages to children violated parents' rights to employ a teacher to instruct their child, *see id.* at 400. But a right to choose the type of school one's child attends, or to direct the *private* instruction of one's child, does not imply a parent's right to control every aspect of her child's education at a public school. *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204-07 (9th Cir. 2005); *Leebaert v. Harrington*, 332 F.3d 134, 140-42 (2d Cir. 2003); *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995); *cf. Wisconsin v. Yoder*, 406 U.S. 205, 232-33 (1972) (limiting state's power over education when it implicates parent's rights under the Free Exercise Clause). Kivett's affidavit testimony shows that her discussions with Marteisha were academic in nature, focusing only on her problems performing and functioning at school. And Marteisha's vague description of the conversations as "personal" in her affidavit, signed at age 16, does not rebut that testimony. Because Thomas pointed the court to no authority to support her claimed right to know about these academically oriented conversations when they occurred, the district court correctly concluded that the school officials were entitled to qualified immunity.

Thomas also argues that school officials denied her other children enrollment at Lodge—they were placed in a different elementary school—in retaliation for Thomas's exercise of her First Amendment rights. But she has adduced no evidence

to support the contention. James Trader, the Director of Student Services and Counseling at the Evansville-Vanderburgh School Corporation, avers that the decision was made to avoid confrontation between school staff and Thomas. Trader believed such a step was necessary because he learned that Thomas had said that she wished Trader would "have a heart attack and die" and that she wished principal Loge's breast cancer had killed her. Without evidence that even hints that the decision was made for constitutionally impermissible reasons, the district court properly dismissed the claim.

We next turn to Thomas's disagreements with the district court's handling of various procedural matters. Her primary assertion, which she reiterates extensively in her reply brief, is that the district court *sua sponte* granted summary judgment without offering her an opportunity to cure the defects in her complaint. But the court did not *sua sponte* grant summary judgment; the school moved for summary judgment after extensive discovery on both sides, and the court considered Thomas's responses to the motion before granting it. Thomas also argues that the court should have granted oral argument on the summary judgment motion, but she has not shown that the district court abused its discretion in denying it. *See* S.D. IND. R. 7.5(a). Thomas's other procedural arguments—failing to set a trial date pending the outcome of the summary judgment motion, allowing extra pages in the school officials' submissions, and failing to hold a status conference after granting summary judgment—are all meritless.

Finally, Thomas appears to have abandoned her state law claims on appeal. In any event, she has not shown that the district court abused its discretion in declining to exercise supplemental jurisdiction over the state law claims after dismissing the federal claims. *See* 28 U.S.C. § 1367(c)(3); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

AFFIRMED.