In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3543

JOHNNIE LEE SAVORY,

*Plaintiff-Appellant*,

*v.*

WILLIAM CANNON, SR.,
as special representative for
CHARLES CANNON, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-00204 — **Gary Feinerman**, *Judge.*

ARGUED SEPTEMBER 24, 2019 — DECIDED JANUARY 7, 2020

Before WOOD, *Chief Judge,* and EASTERBROOK, KANNE,
ROVNER, SYKES, HAMILTON, BARRETT, BRENNAN, SCUDDER and
ST. EVE, *Circuit Judges.**

---

* Judge Flaum took no part in the decision to consider this case en banc,

(continued...)

ROVNER, *Circuit Judge.* Johnnie Lee Savory spent thirty years in prison for a 1977 double murder that he insists he did not commit. Even after his release from prison, he continued to assert his innocence. Thirty-eight years after his conviction, the governor of Illinois pardoned Savory. Within two years of the pardon, Savory filed a civil rights suit against the City of Peoria ("City") and a number of Peoria police officers alleging that they framed him. The district court found that the claims accrued more than five years before Savory filed suit, when he was released from custody and could no longer challenge his conviction in habeas corpus proceedings. Because the statute of limitations on his claims is two years, the district court dismissed the suit as untimely. Savory appealed to this court, and the panel reversed and remanded after concluding that the claim was timely under *Heck v. Humphrey*, 512 U.S. 477 (1994), because it accrued at the time of Savory's pardon, within the two-year limitations period. We granted the defendants' petition for rehearing *en banc* and vacated the panel's opinion and judgment. We again conclude that *Heck* controls the outcome here, and we reverse and remand for further proceedings.

**I.**

In reviewing a grant of a motion to dismiss, we are required to assume that the facts alleged in the complaint are true, but we offer no opinion on the ultimate merits because further development of the record may cast the facts in a light different

---

* (…continued)

nor in this court's subsequent en banc consideration and disposition.

from the complaint. *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 444, 447 (7th Cir. 2009). *See also Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (on a motion to dismiss, a court must accept as true the well-pleaded factual allegations in the complaint). In January 1977, Peoria police officers arrested fourteen-year-old Savory for the rape and murder of nineteen-year-old Connie Cooper and the murder of her fourteen-year-old brother, James Robinson. According to the complaint, these officers subjected Savory to an abusive thirty-one hour interrogation over a two-day period. The officers fabricated evidence, wrongfully coerced a false confession from the teen, suppressed and destroyed evidence that would have exonerated him, fabricated incriminating statements from alleged witnesses, and ignored ample evidence pointing to other suspects. No legitimate evidence implicated Savory. His arrest, prosecution and conviction were based entirely on the officers' fabricated evidence and illegally extracted false confession.

Savory was tried as an adult in 1977 and convicted of first degree murder. After that conviction was overturned on appeal, he was convicted again in 1981. He was sentenced to a term of forty to eighty years in prison. After Savory exhausted direct appeals and post-conviction remedies in state court, he unsuccessfully sought federal habeas corpus relief. He repeatedly petitioned for clemency and also sought DNA testing. After thirty years in prison, he was paroled in December 2006. Five years later, in December 2011, the governor of Illinois commuted the remainder of Savory's sentence. That action terminated his parole (and therefore his custody) but left his conviction intact. On January 12, 2015, the governor pardoned

Savory of the crime of murder,[1] and declared that Savory was "acquitted and discharged of and from all further imprisonment and restored to all the rights of citizenship which may have been forfeited by the conviction." The pardon was granted with an "Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5.2(e)." R. 71-3. On January 11, 2017, less than two years after the pardon, Savory filed suit against the City and the police officers.

That suit asserted six claims under 42 U.S.C. § 1983, five against the individual defendants and one against the City. The five counts against the individual defendants alleged that they: (1) coerced a false confession from Savory in violation of the Fifth and Fourteenth Amendments; (2) coerced a false confession from Savory in violation of his due process rights under the Fourteenth Amendment; (3) maliciously prosecuted Savory, depriving him of liberty without probable cause in violation of the Fourth and Fourteenth Amendments;[2]

---

[1] The governor simultaneously pardoned Savory of the crime of possessing contraband in a penal institution, a crime for which he was convicted in 1994.

[2] Savory acknowledged that, at the time of filing his complaint, our circuit law held that a "so-called federal malicious prosecution claim" was not actionable under section 1983. R. 1, at 20 n.1. He nevertheless pled Count III under the Fourth and Fourteenth Amendments in order to preserve it pending the outcome of the Supreme Court's consideration of *Manuel v. City of Joliet, Ill.*, 590 F. App'x 641 (7th Cir. 2017). The Court subsequently held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017). The Court remanded the case for consideration

(continued...)

(4) deprived Savory of his right to a fair trial, his right not to be wrongfully convicted, and his right to be free of involuntary confinement and servitude in violation of the Thirteenth and Fourteenth Amendments; and (5) failed to intervene as their fellow officers violated Savory's civil rights. In the sixth count, Savory alleged that the City's unlawful policies, practices and customs led to his wrongful conviction and imprisonment in violation of section 1983. Savory also brought state law claims against the defendants but later conceded that those claims

---

[2] (...continued)

of the elements of the claim and the accrual date. Acknowledging that courts are to look first to the common law of torts in defining the contours and prerequisites of a section 1983 claim, the Court declined to resolve the dispute between the parties as to the most analogous common-law tort. The Court also noted that common-law principles guide rather than control the definition of section 1983 claims, and that "[i]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." 137 S. Ct. at 921. Manuel argued that the claim resembled malicious prosecution and the defendant likened the claim to false arrest. We subsequently held that the nature of Manuel's claim was detention without probable cause, even though Manuel was being held by authority of a judicial decision that probable cause existed. Manuel had asserted that the police hoodwinked the judge by falsely asserting that pills he possessed contained unlawful substances. Manuel was released the day after the prosecutor dropped the charges. Because his detention was judicially authorized, we invoked the holdings of *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck*, and held that the claim would accrue when the detention ended. *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018). In Savory's case, the district court did not separately analyze the accrual date for Count III. Now that the Supreme Court has resolved *Manuel*, the accrual date for Count III should be considered on remand.

were untimely under the state's one-year statute of limitations. Those claims are not part of this appeal.

The defendants moved to dismiss Savory's section 1983 claims on several grounds, but the district court addressed only one: the statute of limitations. The court recognized that, under *Heck v. Humphrey*, 512 U.S. 477 (1994), Savory could not bring his section 1983 claims unless and until he obtained a favorable termination of a challenge to his conviction. The parties agreed that the relevant statute of limitations required Savory to bring his claims within two years of accrual, but the parties disagreed on when the *Heck* bar lifted. Savory asserted that his claims did not accrue until he received a pardon from the Illinois governor on January 12, 2015, rendering his January 11, 2017 suit timely. The defendants asserted that the *Heck* bar lifted when Savory's parole was terminated on December 6, 2011, making his claims untimely. The district court concluded that the defendants had the better view of *Heck* and dismissed the claims with prejudice. Savory appeals.

## II.

We review *de novo* a Rule 12(b)(6) dismissal on statute of limitations grounds. *Tobey*, 890 F.3d at 645; *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017). For a section 1983 claim, federal courts look to state law for the length of the limitations period. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). *See also Owens v. Okure*, 488 U.S. 235, 249–50 (1989) ("where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"). In Illinois, the applicable limitations

period is two years. *Tobey*, 890 F.3d at 645. However, the "accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Instead, certain aspects of section 1983 claims, including accrual dates, are "governed by federal rules conforming in general to common-law tort principles." *Id*. Under those common-law tort principles, claims accrue when a plaintiff has a complete and present cause of action. *Id*.; *McDonough*, 139 S. Ct. at 2155. So we must determine the first moment at which Savory had a complete and present cause of action.

## A.

We begin our analysis of the accrual date for Savory's claims with *Heck*, which addressed whether and when a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983. *Heck*, 512 U.S. at 478. While Heck was serving a fifteen-year sentence for manslaughter, he brought a section 1983 action against two prosecutors and a state police inspector asserting that they engaged in an unlawful investigation that led to his arrest, that they knowingly destroyed exculpatory evidence, and that they caused an unlawful voice identification procedure to be used at his trial. 512 U.S. at 478–79.

The Court noted that such a case lies at the intersection of federal prisoner litigation under section 1983 and the federal habeas corpus statute. 512 U.S. at 480. The Court had first considered the potential overlap between these two statutes in *Preiser*, and held then "that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration

of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (citing *Preiser*, 411 U.S. at 488–90). Heck, however, was not seeking immediate or speedier release, but monetary damages, and so his claim was not covered by the holding of *Preiser*. Section 1983 created "a species of tort liability," and so in determining whether there were any bars to Heck's suit, the Court turned first to the common law of torts. *Heck*, 512 U.S. at 481, 483.

Heck's section 1983 claim most closely resembled the common-law tort of malicious prosecution, which allows damages for confinement imposed pursuant to legal process, including compensation for arrest and imprisonment, discomfort or injury to health, and loss of time and deprivation of society. *Heck*, 512 U.S. at 484. *See also McDonough*, 139 S. Ct. at 2156 (finding that the plaintiff's section 1983 fabricated-evidence claim most closely resembled the tort of malicious prosecution). "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. This requirement avoids creating two conflicting resolutions arising out of the same transaction—an extant, enforceable criminal conviction on the one hand, and a civil judgment implying the invalidity of that conviction on the other—and steers clear of parallel litigation over the issue of guilt. The requirement also prevents a convicted criminal from collaterally attacking the conviction through a civil suit:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies

to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the

> action should be allowed to proceed, in the absence
> of some other bar to the suit.

*Heck*, 512 U.S. at 486–87 (footnotes omitted; emphasis in original).

The Court made pellucid the broad consequences of its plainly stated rule:

> We do not engraft an exhaustion requirement upon
> § 1983, but rather deny the existence of a cause of
> action. Even a prisoner who has fully exhausted
> available state remedies has no cause of action
> under § 1983 unless and until the conviction or
> sentence is reversed, expunged, invalidated, or
> impugned by the grant of a writ of habeas corpus.

*Heck*, 512 U.S. at 489. Returning to its comparison to common-law torts, the Court concluded that, just as a claim for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, "so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489–90.

The Supreme Court has reaffirmed the *Heck* framework several times. *See Wallace*, 549 U.S. at 393 (noting that the *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been invalidated; *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn.") (emphasis in original); *Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (citing

*Heck* for the proposition that "a § 1983 suit for damages that would 'necessarily imply' the invalidity of the fact of an inmate's conviction, or 'necessarily imply' the invalidity of the length of an inmate's sentence, is not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence"); *Edwards v. Balisok*, 520 U.S. 641, 643, 645–48 (1997) (reaffirming the holding of *Heck* and extending it to claims challenging prison disciplinary proceedings that implicate the length of a prisoner's sentence). The Court most recently revisited *Heck* in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). There, the Court held that a section 1983 claim for fabricating evidence in a criminal prosecution accrued upon acquittal, and not when the prosecutor's knowing use of the fabricated evidence first caused some deprivation of liberty for the plaintiff. 139 S. Ct. at 2153–54.

The plaintiff in *McDonough* alleged that the prosecutor fabricated evidence in order to inculpate him, including falsifying affidavits, coaching witnesses to lie, and orchestrating a suspect DNA analysis to link McDonough to the crime. The prosecutor brought criminal charges against McDonough and presented the fabricated evidence at a trial which ended in a mistrial. The same prosecutor then retried McDonough, again presenting the fabricated evidence. The second trial resulted in an acquittal. McDonough asserted two claims in his section 1983 action, one for malicious prosecution and one for fabricated evidence. The district court dismissed the malicious prosecution claim as barred by prosecutorial immunity, and dismissed the fabricated evidence claim as untimely, finding that the claim accrued when the fabricated evidence was used

against McDonough. The court of appeals affirmed, finding that McDonough had a complete fabricated-evidence claim as soon as he could show that the prosecutor's knowing use of fabricated evidence caused him some deprivation of liberty. Relying on *Heck* and its progeny, the Supreme Court reversed, concluding:

> The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor. This conclusion follows both from the rule for the most natural common-law analogy (the tort of malicious prosecution) and from the practical considerations that have previously led this Court to defer accrual of claims that would otherwise consti-tute an untenable collateral attack on a criminal judgment.

139 S. Ct. at 2154–55. In McDonough's case, favorable termina-tion occurred at acquittal after the second trial.[3]

---

[3] Savory argued in supplemental briefing that this holding in *McDonough* calls into question the continued validity of *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018). *McDonough* addressed claim accrual in the context of a trial resulting in mistrial, followed by retrial resulting in acquittal. *Johnson* addressed claim accrual in the context of a trial resulting in a conviction, followed by reversal on appeal, then retrial resulting in a second conviction, followed again by reversal on appeal. *McDonough* concluded that the claim accrued only at the resolution of the second trial. *Johnson* allowed for two accrual dates, one at favorable termination of the first trial (in the form of the appellate reversal) and the second at favorable termination of the

(continued...)

The Court began the accrual analysis by identifying the specific constitutional right that had been infringed, a due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer. *McDonough*, 139 S. Ct. at 2155; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017). Noting its frequent practice of deciding accrual issues by reference to common-law principles governing analogous torts, the Court concluded that the most analogous common-law tort for McDonough's fabricated-evidence claim was malicious prosecution.[4] *See Heck*, 512 U.S. at 484. Following that analogy, the Court concluded that McDonough could not bring his section 1983 fabricated evidence claim prior to the favor-

---

[3] (...continued)
second trial (again in the form of reversal on appeal). Savory asks this court to resolve the seeming inconsistency by finding that there is only one accrual date in a single criminal case with a retrial. To the extent that it is necessary to reconsider *Johnson*, we conclude that the more prudent course is to allow the district court to consider in the first instance, after full briefing from both the plaintiff and the defendants, whether and how *McDonough* affects *Johnson*.

[4] Savory also argued in supplemental briefing that we should overrule *Manuel v. City of Joliet, Ill.*, 903 F.3d 667 (7th Cir. 2018), to the extent that opinion rejected analogies to common-law torts in section 1983 actions. Savory contends that *McDonough* dictates–contrary to our 2018 *Manuel* opinion–that his claim for unlawful detention after legal process accrued at the same time as all of his other claims, specifically at the time of his pardon. We again conclude that, to the extent that it is necessary to consider this argument, the prudent course of action is for Savory to raise these issues first in the district court, where, with the benefit of full briefing, the court may consider in the first instance whether and how *McDonough* affects our 2018 decision in *Manuel*.

able termination of his prosecution. *McDonough*, 139 S. Ct. at 2156. Citing *Heck*, *Preiser*, 411 U.S. at 490, and *Younger v. Harris*, 401 U.S. 37, 43 (1971), the Court reiterated the rationales underlying the favorable-termination rule:

> [The] favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments. … The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation. … These concerns track similar concerns for finality and consistency that have motivated this Court to refrain from multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983.

*McDonough*, 139 S. Ct. at 2156–57 (internal citations and quotation marks omitted). Although *Heck* involved a plaintiff who had been convicted rather than a plaintiff who was acquitted, the Court found that:

> the pragmatic considerations discussed in *Heck* apply generally to civil suits within the domain of habeas corpus, not only to those that challenge convictions. See *Preiser*, 411 U.S. at 490–491, 93 S.Ct. 1827. The principles and reasoning of *Heck* thus point toward a corollary result here: There is not " 'a complete and present cause of action,' " *Wallace*, 549 U.S. at 388, 127 S.Ct. 1091, to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing.

> Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, see 512 U.S. at 486–487, 114 S.Ct. 2364, will the statute of limitations begin to run.

*McDonough*, 139 S. Ct. at 2158.

**B.**

Applying the analytical paradigm of *Heck* and *McDonough* to Savory's case, we first look at the nature of his section 1983 claims and conclude that, like Heck's claims, they strongly resemble the common-law tort of malicious prosecution. Indeed, Savory's claims largely echo Heck's complaint, asserting the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction. There is no logical way to reconcile those claims with a valid conviction. Therefore, *Heck* supplies the rule for accrual of the claim. Because Savory's claims "would necessarily imply the invalidity of his conviction or sentence," his section 1983 claims could not accrue until "the conviction or sentence ha[d] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. In Savory's case, that occurred on January 12, 2015, when the governor of Illinois pardoned him.[5] *Gilbert v. Cook*, 512 F.3d

---

[5] At oral argument for the *en banc* rehearing, counsel for the defendants took the position that Savory's pardon was not a favorable termination

(continued...)

899, 900 (7th Cir. 2008) ("the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon."). Until that moment, his conviction was intact and he had no cause of action under section 1983. *Heck*, 512 U.S. at 489–90. His January 11, 2017, lawsuit was therefore timely under *Heck*, and we must reverse the district court's judgment and remand for further proceedings.

*McDonough* supports the same result. Because McDonough (who was not held in custody during his trials) was acquitted rather than convicted, his section 1983 claim would not have infringed upon the exclusivity of the habeas corpus remedy. The Court nevertheless indicated that the other concerns discussed in *Heck* still guided the outcome, and no section 1983 claim could proceed until the criminal proceeding ended in the defendant's favor or the resulting conviction was invalidated within the meaning of *Heck*. So too with Savory. Although his sentence had been served and habeas relief was no longer available to him (and thus habeas exclusivity was not at issue), the other considerations raised in *Heck* controlled the outcome: he had no complete cause of action until he received a favorable termination of his conviction, which occurred when the governor issued a pardon for the subject conviction.

---

[5] (...continued)
because it was a general pardon rather than a pardon based on innocence. As we will discuss below, Savory's pardon does operate as a favorable termination for the purposes of the *Heck* analysis.

**C.**

The defendants here contend that Savory's federal claims accrued when he was released from state custody in 2011, even though his conviction remained intact. The rule urged by the defendants would result in claims being dead on arrival in virtually all section 1983 suits brought in relation to extant convictions. "Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry*, 449 U.S. 90, 96 (1980). *See* 28 U.S.C. § 1738 (judicial proceedings of any court of any State "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State"). In *Allen*, the Supreme Court considered "whether the rules of res judicata and collateral estoppel are generally applicable to § 1983 actions."[6] 449 U.S. at 96. The Court concluded that the usual rules of preclusion apply in section 1983 actions. 449 U.S. at 103–05. Federal courts apply the preclusion law of the state where the judgment was rendered, so long as the state in question satisfies the applicable requirements of the Due Process Clause. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82 (1982). The *Heck* bar accounts for the preclusive effect

---

[6] Under res judicata, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94. Under collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id*.

of state court criminal judgments on civil litigation by lifting the bar only when the plaintiff has achieved a favorable termination of the criminal proceeding. *See Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019) (the *Heck* rule is a version of issue preclusion under which the outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent civil judgment). Under the defendants' rule, a section 1983 claim would accrue on release from custody even though the conviction remained intact, and even though preclusion rules would effectively prevent the plaintiff from bringing any claim inconsistent with the original criminal conviction. Claimants like Savory, who obtained a pardon several years after release from custody and who may have the most meritorious claims, would be too late. Nothing in *Heck* requires such a result.

**D.**

Although a straight-forward reading of *Heck* and its progeny (including *McDonough*) determines the outcome here, we must address the defendant's arguments that concurring and dissenting opinions of certain Supreme Court justices cobbled together into a seeming majority or the opinions of this court may somehow override the prime directive of *Heck*. Several of our post-*Heck* cases contain dicta or rely on reasoning that is in conflict with *Heck* and *McDonough*, and we must address and clarify those cases as well.

**1.**

The misunderstanding that led to the erroneous result in the district court here originated in a concurrence in *Heck* filed by Justice Souter and joined by Justices Blackmun, Stevens and

O'Connor. In that concurrence, Justice Souter agreed that reference to the common-law tort of malicious prosecution was a useful starting point but he asserted that it could not alone provide the answer to the conundrum found at the intersection between section 1983 and the federal habeas statute. Ultimately, Justice Souter suggested a slightly different rule that he submitted would avoid any collision between section 1983 and the habeas statute:

> A state prisoner may seek federal-court § 1983 damages for unconstitutional conviction or confinement, but only if he has previously established the unlawfulness of his conviction or confinement, as on appeal or on habeas. This has the effect of requiring a state prisoner challenging the lawfulness of his confinement to follow habeas's rules before seeking § 1983 damages for unlawful confinement in federal court[.]

*Heck*, 512 U.S. at 498 (Souter, J., concurring).

For persons *not* in custody for the purposes of the habeas statute, "people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences," there would be no requirement to show "the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment" because:

> the result would be to deny any federal forum for claiming a deprivation of federal rights to those who

cannot first obtain a favorable state ruling. The
reason, of course, is that individuals not "in cus-
tody" cannot invoke federal habeas jurisdiction, the
only statutory mechanism besides § 1983 by which
individuals may sue state officials in federal court
for violating federal rights. That would be an unto-
ward result.

*Heck*, 512 U.S. at 500 (Souter, J., concurring).

In contrast, of course, the *Heck* majority's rule requires that
a plaintiff *always* obtain a favorable resolution of the criminal
conviction before bringing a section 1983 claim that would
necessarily imply the invalidity of a conviction or sentence.
The majority opinion specifically rejected Justice Souter's
alternate rule:

Justice SOUTER also adopts the common-law
principle that one cannot use the device of a civil
tort action to challenge the validity of an outstand-
ing criminal conviction, but thinks it necessary to
abandon that principle in those cases (of which no
real-life example comes to mind) involving former
state prisoners who, because they are no longer in
custody, cannot bring postconviction challenges. We
think the principle barring collateral attacks—a
longstanding and deeply rooted feature of both the
common law and our own jurisprudence—is not
rendered inapplicable by the fortuity that a con-
victed criminal is no longer incarcerated.

*Heck*, 512 U.S. at 490 n.10 (citations omitted). The Court thus
expressly rejected a rule tied to the end of custody. In that

same footnote, the Court also dismissed the notion that section 1983 must be interpreted in a manner that provides a remedy for all conceivable invasions of federal rights. *Id*. *See also Allen*, 449 U.S. at 103–04 (inability to obtain federal habeas corpus relief upon a Fourth Amendment claim does not render the doctrine of collateral estoppel inapplicable to a section 1983 suit on that same claim). In other words, there is not always a section 1983 remedy for every constitutional wrong. *See San Remo Hotel, L.P. v. City and Cty. of San Francisco*, 545 U.S. 323, 342 (2005) (issues actually decided in valid state-court judgments may well deprive plaintiffs of the right to have their federal claims re-litigated in federal court). In *Allen*, for example, the Court made clear that an inability to pursue relief through the habeas statute would not relieve a section 1983 claimant of the preclusive effect of a state court judgment where the claimant had a full and fair opportunity to litigate the issue in state court. *Allen*, 449 U.S. at 102–05.

But in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), Justice Souter again filed a concurrence expressing the view that he urged in his *Heck* concurrence, namely "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."[7] Justice Ginsburg, who had been in the majority in

---

[7] In Savory's case, of course, it was *not* impossible as a matter of law to satisfy the favorable-termination rule even though he had fully served his sentence and lacked access to habeas corpus. Savory sought and received

(continued...)

*Heck*, this time agreed with Justice Souter (who was also joined by Justices O'Connor and Breyer), joining his concurrence and filing her own: "Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'" *Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring). Justice Stevens dissented in *Spencer*, but he approved Justice Souter's basic premise: "Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice SOUTER explains, that he may bring an action under 42 U.S.C. § 1983." *Spencer*, 523 U.S. at 25 n.8 (Stevens, J., dissenting).

The defendants contended in the district court and maintain on appeal that this dicta in concurring and dissenting opinions, cobbled together, now formed a new majority, essentially overruling footnote 10 in *Heck*. But it is axiomatic that dicta from a collection of concurrences and dissents may not overrule majority opinions. *See Agostini v. Felton*, 521 U.S. 203, 217, 238 (1997) (the views of five concurring Justices that a case should be reconsidered or overruled cannot be said to have effected a change in the law when the propriety of that case was not before the Court; instead, the case controls until the Court reinterprets and overrules the binding precedent); *Cross v. United States*, 892 F.3d 288, 303 (7th Cir. 2018) ("Unless and until a majority of the Court overrules the majority

---

[7] (...continued)

an executive pardon. Illinois also provides a statutory remedy allowing petitioners to seek relief from final judgments in certain circumstances. *See* 735 ILCS 5/2-1401.

opinions in [two prior cases], they continue to bind us."). The Supreme Court may eventually adopt Justice Souter's view, but it has not yet done so and we are bound by *Heck*. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). *See also Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (noting that members of the Court had expressed the view that "unavailability of habeas for other reasons may also dispense with the *Hec*k requirement" but indicating that "[t]his case is no occasion to settle the issue.").

The defendants also assert that footnote 10 of *Heck* (which specifically rejected Justice Souter's proposed rule) was dicta, and therefore does not control the outcome here. The plaintiff in *Heck*, they note, was incarcerated and allowing a section 1983 suit during incarceration would have permitted an end-run around the habeas corpus statute. No such concern is present, they argue, in the scenario addressed in footnote 10 of *Heck*, specifically, persons who are no longer in custody and cannot bring habeas challenges. But *Heck* was concerned with more than the exclusivity of the habeas corpus remedy for persons in custody, or the intersection between habeas corpus and section 1983. The favorable termination rule in *Heck* also rested on concerns arising generally from collateral attacks on extant criminal convictions through civil law suits. Specifically, requiring a section 1983 plaintiff to prove favorable termination of the criminal conviction avoids parallel litigation over the issues of probable cause and guilt, and precludes the

possibility that a plaintiff might succeed in a civil tort action after having been convicted in the underlying criminal prosecution, allowing the creation of conflicting judgments arising out of the same transaction. *Heck*, 512 U.S. at 485–86. These concerns were repeated recently in *McDonough* as rationales supporting the application of *Heck*'s favorable termination rule in a case that did not implicate concerns about habeas corpus. Because the plaintiff had been acquitted rather than convicted, there was little likelihood of a collision between habeas corpus and section 1983. Yet the Court cited the continued relevance of the favorable-termination rule as being "rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2156–57. In further support of the favorable termination rule, the Court also cited related concerns for finality, consistency, and the avoidance of unnecessary friction between the state and federal court systems. 139 S. Ct. at 2157. Although footnote 10 of *Heck* addressed a factual scenario that was not before the Court, to dismiss all of footnote 10 as dicta is to divorce a significant part of the Court's rationale from its holding. The Court was simply making clear how broadly it intended its holding to apply.

**2.**

The defendants also asserted below and argued on appeal that this court has abrogated the rule in *Heck*, citing five cases: *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006); *Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012); *Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017); and *Sanchez v. City of Chicago*, 880 F.3d 349 (7th Cir. 2018). Accord-

ing to the defendants, those cases "together sensibly hold an individual who is no longer in custody with no access to habeas corpus relief may bring a § 1983 action challenging the constitutionality of a still standing conviction without first satisfying the favorable termination rule of *Heck*." Brief of Defendants-Appellees (hereafter "Defendants' Brief"), at 7–8. As we just explained, however, this court may not on its own initiative overturn decisions of the Supreme Court. Although four of those five cases came to correct resolutions, some of our language and reasoning has created confusion regarding the applicability of *Heck* in cases where habeas relief is not available. Indeed, it was on these cases that the district court relied in concluding that Savory had brought his claims too late. The confusion began in *DeWalt*, an opinion that had been circulated to the full court under Circuit Rule 40(e). *DeWalt*, 224 F.3d at 618 n.6 (noting that no judge in active service favored rehearing en banc).

### a.

In *DeWalt*, we considered whether a prisoner could bring a section 1983 claim related to the loss of his prison job when the underlying disciplinary sanction had not been overturned or invalidated. Because DeWalt did not challenge the fact or duration of his confinement, a habeas petition was not the appropriate vehicle for his claims. 224 F.3d at 617. DeWalt challenged only a condition of his confinement—namely, the loss of his prison job—making a section 1983 claim the appropriate course of action. *Id*. We summarized our holding with the rule "that the unavailability of federal habeas relief does not preclude a prisoner from bringing a § 1983 action to challenge a condition of his confinement that results from a

prison disciplinary action." 224 F.3d at 618. We discussed the minority views in *Spencer* and *Heck* in the context of answering a then-open question, namely, "whether *Heck*'s favorable-termination requirement bars a prisoner's challenge under § 1983 to an administrative sanction that does not affect the length of confinement." 224 F.3d at 616. We concluded that it did not, a position later approved by the Supreme Court. *See Muhammad*, 540 U.S. at 754 (noting that the Seventh Circuit in *DeWalt* had taken the position that *Heck* did not apply to prison disciplinary proceedings in the absence of any implication going to the fact or duration of the underlying sentence, and likewise concluding that because Muhammad's claim did not seek a judgment at odds with his conviction or with the state's calculation of time to be served, *Heck*'s favorable-termination requirement was inapplicable). We reaffirm *DeWalt*'s basic holding today: a section 1983 complaint that challenges a disciplinary sanction related only to the conditions of confinement and that does not implicate the validity of the underlying conviction or the duration of the sentence (e.g. loss of good time credits) is not subject to *Heck*'s favorable termination requirement. *See also Muhammad*, 540 U.S. at 754–55.

But part of the reasoning and language of *DeWalt* went further than that and implied that, in all cases where habeas relief is unavailable, then section 1983 must provide an avenue of relief. *See DeWalt*, 224 F.3d at 617 ("Because federal habeas relief is not available to Mr. DeWalt, the language of § 1983 and the Court's decision in *Preiser* dictate that he be able to proceed

on his § 1983 action.").[8] This language suggesting that a section 1983 remedy must be available when habeas relief is unavailable is in conflict with footnote 10 of *Heck* and with our holding today. Moreover, it was unnecessary to the holding in *DeWalt*, and we now disavow that language.

In *DeWalt*, we also overruled our prior decisions in *Anderson v. County of Montgomery*, 111 F.3d 494 (7th Cir. 1997), and *Stone-Bey v. Barnes*, 120 F.3d 718 (7th Cir. 1997), to the extent that they applied the rule in *Heck* to situations in which habeas relief was not available:

> We are aware that our decisions in *Anderson v. County of Montgomery*, 111 F.3d 494 (7th Cir.1997), and *Stone–Bey v. Barnes*, 120 F.3d 718 (7th Cir. 1997), precluded plaintiffs from pursuing § 1983 actions when federal habeas was not available or when the prisoner had not first availed himself of that option. However, we note that both of these cases preceded *Spencer*. Indeed, our more recent cases have questioned the viability of *Anderson* and *Stone–Bey* in light of the Justices' reluctance to apply the *Heck* rule to situations in which habeas relief is not available. *See Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir.)

---

[8] *Preiser* held that a section 1983 action "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). *Muhammad* then later clarified that *Heck* does not apply to prison disciplinary suits related only to conditions of confinement when those suits do not raise any implication about the validity of the conviction or the length of the sentence. 540 U.S. at 754–55.

> ("[T]here is probably an exception to the rule of *Heck* for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction."), *cert. denied*, 528 U.S. 970, 120 S.Ct. 411, 145 L.Ed.2d 320 (1999); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir.1999) ("With Carr unable to get the disciplinary sanction reversed, five Justices would not consider the sanction a bar to a section 1983 suit even though that suit calls into question the validity of the sanction."); *Sylvester v. Hanks*, 140 F.3d 713, 714 (7th Cir.1998) (questioning whether *Heck* would preclude a § 1983 action to review placement in segregation given that "few states afford collateral review of prison disciplinary hearings"). Our decision today necessitates that we overrule *Anderson* and *Stone–Bey* to the extent they take the contrary position.

*DeWalt*, 224 F.3d at 617–18.

It was appropriate to overrule *Stone-Bey*, but not for the reason that we stated in *DeWalt*. *Stone-Bey* involved a prisoner's section 1983 challenge to conditions of confinement alone. In determining whether the *Heck* bar applied to his claim, we considered whether it made "any difference in applying *Heck* that the sentence imposed was one of disciplinary segregation alone, as opposed to segregation coupled with a loss of good-time credits," and erroneously concluded that it did not. 120 F.3d at 721. We then applied *Heck*'s favorable termination rule and barred the prisoner's claim even though it did not implicate the validity of his conviction or sentence. That holding conflicts with *Muhammad*. *Stone-Bey* was in error

but not because, as *DeWalt* stated, section 1983 must be available when habeas is not. 224 F.3d at 617. Instead, the holding in *Stone-Bey* was incorrect because *Heck* does not apply to conditions-of-confinement claims that do not implicate the validity of the underlying conviction or the length of custody.

There was no need to overrule *Anderson*. Anderson filed a section 1983 action that challenged the validity of his extant conviction, a claim that normally would be barred by *Heck* unless and until the plaintiff obtained a favorable termination of that underlying conviction. 111 F.3d at 498–99. Anderson argued that, because he had been released from prison and no longer had access to habeas relief, he must have access to section 1983. The *Anderson* panel rejected that contention for two reasons: first, Anderson was on "conditional release," a form of parole that likely meant he *did* retain access to habeas as a means of challenging his conviction. Second, *Heck* had rejected in footnote 10 the very argument which Anderson raised. We noted that, even if footnote 10 was dicta, the favorable termination rule of *Heck* also applied to persons no longer in custody because it was an element of the analogous common-law tort claim on which the section 1983 claim was based. That analysis was perfectly consistent with *Heck* and with our holding today.

**b.**

*Simpson* similarly addressed a claim by a prisoner related to disciplinary segregation and loss of recreation privileges. Because the claim related to conditions of confinement rather than to the lawfulness of a conviction or duration of confine-ment, we held that *Heck's* favorable termination rule did not

apply, reversing the district court's decision to the contrary.
450 F.3d at 306–07 (citing *Muhammad*, 540 U.S. at 754–55). That
holding of *Simpson* is correct. But we also asserted that *Muhammad* and *DeWalt* established that:

> the doctrine of *Heck* and *Edwards* [*v. Balisok*] is
> limited to prisoners who are "in custody" as a result
> of the defendants' challenged acts, and who there-
> fore are able to seek collateral review. Take away the
> *possibility* of collateral review and § 1983 becomes
> available. Simpson can't obtain collateral relief in
> either state or federal court, so he isn't (and never
> was) affected by *Heck* or *Edwards*.

*Simpson*, 450 F.3d at 307 (emphasis in original). This and
similar passages in *Simpson* cannot survive our decision today.
*Heck* did not lose its vitality because Simpson had been
released from custody. Instead, *Heck* did not apply because
Simpson's conditions-of-confinement claim did not implicate
the validity of his conviction or the length of his sentence.

*Muhammad* in fact indicated that the Court had not yet had
an occasion to revisit the minority views expressed in *Spencer*:

> Members of the Court have expressed the view that
> unavailability of habeas for other reasons may also
> dispense with the *Heck* requirement. See *Heck v.
> Humphrey*, 512 U.S. 477, 491, 114 S.Ct. 2364, 129
> L.Ed.2d 383 (1994) (SOUTER, J., concurring in
> judgment); *Spencer v. Kemna*, 523 U.S. 1, 21–22, 118
> S.Ct. 978, 140 L.Ed.2d 43 (1998) (GINSBURG, J.,
> concurring). This case is no occasion to settle the
> issue.

*Muhammad*, 540 U.S. at 752 n.2. *Simpson* read that footnote as conceding that *Heck* left this issue open. But footnote 2 of *Muhammad* merely acknowledged the possibility that the Court may someday revisit footnote 10 of *Heck*. Because it has not yet done so, we are bound by the holding and reasoning of *Heck*.

**c.**

*Burd* involved a section 1983 suit for damages, alleging that prison officials deprived the plaintiff of access to the prison library, which in turn prevented him from preparing a timely motion to withdraw his guilty plea. *Burd*, 702 F.3d at 431. We concluded that the damages that Burd was seeking to recover were predicated on a successful challenge to his conviction, and so *Heck* applied. 702 F.3d at 434–35. And "[t]he rule in *Heck* forbids the maintenance of such a damages action until the plaintiff can demonstrate his injury by establishing the invalidity of the underlying *judgment*." 702 F.3d at 435 (emphasis in original). That reasoning and holding was sound.

But in rejecting Burd's alternate theory, we endorsed the reasoning from *DeWalt* and *Simpson* that we now disavow. We stated "that *Heck* applies where a § 1983 plaintiff *could* have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing." 702 F.3d at 436 (emphasis in original). We added:

> Permitting a plaintiff who ignored his opportunity
> to seek collateral relief while incarcerated to skirt the
> *Heck* bar simply by waiting to bring a § 1983 claim
> until habeas is no longer available undermines *Heck*
> and is a far cry from the concerns, as we understand

them, of the concurring Justices in *Spencer* for those individuals who were precluded by a legal impediment from bringing an action for collateral relief.

702 F.3d at 436. Nothing in the record revealed any impediment to Burd seeking collateral relief while he was in custody. We therefore:

join[ed] the Sixth and Ninth Circuits in holding that *Heck* bars a § 1983 action where: (1) [a] favorable judgment would necessarily call into question the validity of the underlying conviction or sentence and (2) the plaintiff could have pursued collateral relief but failed to do so in a timely manner.

702 F.3d at 436. That statement should have ended after item (1). The dicta of five Justices in *Spencer* did not overrule the holding and reasoning of *Heck*, and a plaintiff's failure to pursue habeas relief when it was available is irrelevant to whether the *Heck* bar applies. We repudiate that part of *Burd* that gives any significance to whether the plaintiff lost access to habeas relief through no fault of his own.

### d.

The confusion that began in *DeWalt*, and that continued in dicta in *Simpson* and *Burd*, eventually led to a result in *Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017), which was, in retrospect, incorrect. Although *Whitfield* was controlled by *Edwards v. Balisok*, *supra*, rather than by *Heck*, we relied in part on dicta from both *Burd* and *Carr v. O'Leary*, 167 F.3d 1124 (7th Cir. 1999), to conclude that a former prisoner could pursue a section 1983 claim challenging prison disciplinary proceedings

that led to loss of good time credits without first obtaining a favorable termination of those proceedings.

Whitfield sought damages under section 1983 for the retaliatory revocation of good time credits. 852 F.3d at 659. He pursued collateral review while he was in prison (albeit in a manner we characterized as not "procedurally perfect"), including a federal habeas claim, but was released from custody before his claims were resolved. We found that *Balisok* rather than *Heck* most directly governed Whitfield's section 1983 claims. *Whitfield*, 852 F.3d at 663. *Balisok* addressed the claim of a state prisoner alleging due process violations for procedures used in a disciplinary hearing that resulted in a loss of "good-time" credits. *Balisok*, 520 U.S. at 643. The *Balisok* Court found that "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." 520 U.S. at 646. But Balisok had not demonstrated that the result of the disciplinary hearing had been set aside, and so the Court found his claim not cognizable under § 1983. 520 U.S. at 648.

*Whitfield* first nodded to the holding in *Heck*, noting that in "section 1983 suits that did not directly seek immediate or speedier release, but rather sought monetary damages that would call into question the validity of a conviction or term of confinement, … a prisoner has no claim under section 1983 until he receives a favorable decision on his underlying conviction or sentence, such as through a reversal or grant of habeas corpus relief." *Whitfield*, 852 F.3d at 661. We also noted that *Balisok* extended the *Heck* bar to section 1983 suits brought by prisoners challenging the outcome of prison disciplinary

proceedings in which the plaintiffs sought damages rather than earlier release. *Id*. We then attempted to distinguish *Balisok*:

> Had [Balisok] prevailed, the result of the disciplinary proceeding would have to have been set aside. Whitfield, in contrast, is arguing that the [disciplinary] hearings should never have taken place at all, because they were acts of retaliation for his exercise of rights protected by the First Amendment. He has no quarrel with the procedures used in the prison disciplinary system. He could just as well be saying that a prison official maliciously calculated an improper release date, or "lost" the order authorizing his release in retaliation for protected activity. In short, the essence of Whitfield's complaint is the link between retaliation and his delayed release; the fact that disciplinary proceedings were the mechanism is not essential. *Balisok* also took care to be precise, when it held that the petitioner's claim for prospective injunctive relief could go forward under section 1983, since it did not necessarily imply anything about the loss of good-time credits.

*Whitfield*, 852 F.3d at 663. Unlike Balisok, we asserted, Whitfield was not seeking to set aside the result of a process but rather was claiming that the process should not have occurred at all. And unlike Burd, Whitfield had pursued collateral relief to the degree possible, until he was released from custody and the district court dismissed his habeas petition as moot.

We found those factors distinguishing and allowed the claims to proceed. But Whitfield's circumstances were not truly distinguishable from those of Balisok or Burd. A plaintiff's good-faith but unsuccessful pursuit of collateral relief does not relieve him of *Heck's* favorable termination requirement. Because Whitfield had not yet obtained a favorable termination of the disciplinary proceedings that led to a loss of good time credit, he had no cognizable claim under section 1983. We must therefore overrule our decision in *Whitfield*.

**e.**

That leaves *Sanchez*, the last case on which the defendants relied. Sanchez brought section 1983 claims asserting wrongful arrest and excessive force, claims that would not necessarily imply the invalidity of his conviction, and so we noted correctly that *Heck* did not apply to those claims. 880 F.3d at 356. *See also Wallace*, 549 U.S. at 389–91 (statute of limitations for a claim for false arrest begins to run upon initiation of legal process). But Sanchez also suggested that he was framed, a claim that would imply the invalidity of his conviction. We relied on *Whitfield* to find that "*Heck* does not bar a suit by a plaintiff who is no longer in custody but who pursued a collateral attack through appropriate channels while he was in custody, even if such efforts were unavailing." 880 F.3d at 356. Because Sanchez sought post-conviction relief in state courts before his release from custody, we concluded that *Heck* did not apply. That reasoning does not survive our decision today. But the final result in *Sanchez* is nevertheless correct, because we went on to conclude that Sanchez's claim that he was framed was subject to issue preclusion, and so there was no need to remand for a new trial. 880 F.3d at 358. *See also Green*

*v. Junious*, 937 F.3d 1009, 1014 (7th Cir. 2019) (noting that *Heck* did not categorically bar the suit in *Sanchez* but the state criminal judgment had preclusive effect under traditional collateral-estoppel analysis).

**E.**

Our dissenting colleague urges the court to adopt an accrual rule tied to the end of custody. A claim accrues when a plaintiff has "a complete and present cause of action." *McDonough*, 139 S. Ct. at 2155; *Wallace*, 549 U.S. at 388; *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997). When a section 1983 claim resembles the common-law tort of malicious prosecution, the Court treats favorable termination as an element of the claim. *McDonough*, 139 S. Ct. at 2156-57; *Heck*, 512 U.S. at 484. Without favorable termination, a plaintiff lacks "a complete and present cause of action." Yet the dissent's rule would require a plaintiff to file suit without this essential element of the claim. *See Heck*, 512 U.S. at 489 ("deny[ing] the existence of a cause of action" until favorable termination of the conviction).

As a model for this rule, the dissent cites *Poventud v. New York*, 715 F.3d 57 (2d Cir. 2013), a decision vacated by the en banc Second Circuit.[9] *Poventud*, in turn, relied on *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999), and *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999). *Jenkins*, like *DeWalt*, correctly decided that

---

[9] The en banc Second Circuit resolved the case on other grounds that have no bearing on the circumstances that we address here. *Poventud v. New York*, 750 F.3d 121 (2d Cir. 2014).

the *Heck* bar does not apply in conditions-of-confinement cases brought under section 1983. 179 F.3d at 27. *Jenkins* also included dicta that suggested that a section 1983 remedy must be available when habeas relief is not available. 179 F.3d at 27. That language is virtually identical to the dicta in our own cases that we disavow today. In *Leather*, the Second Circuit relied on the dicta from *Jenkins* to conclude that a section 1983 plaintiff who was assessed a fine but was never in custody could bring his claim even though his conviction was extant. 180 F.3d at 424. For the reasons we have discussed above, we find none of these cases persuasive.

In requiring favorable termination before allowing a section 1983 claim to proceed, *Heck* sets a high standard. Undoubtedly, as the dissent asserts, some valid claims will never make it past the courthouse door. *Heck* explains, though, why a high bar must be cleared before seeking damages in a civil action on claims that imply the invalidity of a criminal conviction. The Court sought to avoid parallel litigation on the issue of guilt, preclude the possibility of conflicting resolutions arising out of the same transaction, prevent collateral attacks on criminal convictions through the vehicle of civil suits, and respect concerns for comity, finality and consistency. *Heck*, 512 U.S. at 485–86. *See also McDonough*, 139 S. Ct. at 2156–57. We are not in a position to alter the *Heck* standard or set aside these concerns.

**F.**

We have said several times that Savory's claims did not accrue until he obtained a favorable termination of his conviction and that this occurred when the governor of Illinois pardoned him. We base this conclusion on *Heck* itself, which

lists "expunge[ment] by executive order" as one of the ways in which a plaintiff may demonstrate favorable termination. *Heck*, 512 U.S. at 487. At the *en banc* oral argument, the defendants alerted the court for the first time that, if we were to hold that Savory's claim accrued on favorable termination, they intended to argue on remand that the governor's January 12, 2015, pardon is not a favorable termination. Under that theory, the defendants contend, Savory brought his claims not too late (as they claimed on appeal) but too early. The district court rested its dismissal of the case solely on the defendants' argument that Savory's claim was too late because it accrued on December 6, 2011, when his sentence was commuted, his custody ended, and he lost access to the remedy of habeas corpus. At no time in the district court did the defendants argue in the alternative that Savory's federal claims were too early, or that the date of accrual was anything other than December 6, 2011. This entire appeal has been framed as a contest between two possible dates of accrual: the end of custody versus favorable termination. The defendants never suggested until the *en banc* oral argument that there was a third possible date for accrual, one that has yet to occur. Savory's claims have already been more than forty years in the making and we wish to avert further delays due to any misunderstanding of this court's holding today; and so we now clarify that the governor's January 12, 2015, pardon was a favorable termination for the purposes of the *Heck* analysis.

For many reasons, this holding should not be a surprise to the defendants. On the first page of their appellate brief, they stated that, "[O]n January 12, 2015, Savory was granted a general pardon from then Illinois Governor Pat Quinn. *That*

*pardon set aside Savory's double murder conviction.*" Defendants'
Brief, at 1 (emphasis added). Although they later asserted that
this general pardon was not based on innocence and failed to
restore all of Savory's rights of citizenship (they interpret the
pardon to withhold the right to sell, receive, or possess a
firearm), they attached no significance to this assertion within
the *Heck* framework. Defendant's Brief, at 5. Instead, they later
conceded that this court has already stated that a section 1983
plaintiff's claims related to a conviction accrue at the time of a
pardon. *See* Defendants' Brief, at 23 ("It is true that this Court,
in *Newsome*, said it was the plaintiff's pardon that marked the
accrual of the § 1983 claims."). *See also Newsome v. McCabe*, 256
F.3d 747, 749, 752 (7th Cir. 2001) ("a claim based on wrongful
conviction and imprisonment did not accrue until the pardon"
and "the due process claim's accrual was postponed by *Heck*
until the pardon."), abrogated on other grounds, *Manuel v. City
of Joliet, Ill.*, 137 S. Ct. 911 (2017).

The defendants attempted to distinguish *Newsome*, but that
case is neither meaningfully distinguishable nor unique in
characterizing a pardon by a state's executive as adequate for
*Heck's* favorable termination requirement. In the context of
discussing favorable terminations under *Heck*, we have often
used "pardon" or "executive pardon" as synonyms for
"expunged by executive order," the phrase that the Court
employed in *Heck*. *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670
(7th Cir. 2018) ("§ 1983 cannot be used to obtain damages for
custody based on a criminal conviction—not until the convic-
tion has been set aside by the judiciary or an executive par-
don"); *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("a claim
that implies the invalidity of a criminal conviction does not

accrue … until the conviction is set aside by the judiciary or the defendant receives a pardon"); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008) ("the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon"). That a pardon is a favorable termination under *Heck* is well-settled.

Nevertheless, the defendants assert that Illinois employs two kinds of pardons, a general pardon and a pardon based on innocence. They argue that only a pardon based on innocence is a favorable termination for the purposes of *Heck*. Because Savory has obtained only a general pardon and not a pardon based on innocence, the defendants indicated at oral argument that they intended to argue on remand that he brought his claims too soon. The contention that a pardon must be based on innocence in order to serve as a favorable termination finds no support in *Heck*, and we see no reason to impose that additional limitation on *Heck's* holding. If the Court had wanted to specify that the pardon must be based on innocence, it certainly could have done so, but it did not. Instead, the Court offered a list of possible resolutions that would satisfy the favorable termination requirement, and none require an affirmative finding of innocence. A conviction need only be "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Any of these outcomes can occur without a declaration of a defendant's innocence. *McDonough* added that acquittal is a favorable termination under *Heck* that starts the clock on claim

accrual, another resolution that does not necessarily imply innocence. *McDonough*, 139 S. Ct. at 2161.

The Governor's pardon of Savory meets the standard articulated in *Heck*:

> Now, Know Ye, that I, PAT QUINN, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of the State, do by these presents: PARDON JOHNNY [sic] L. SAVORY (SID: 23061880) of the said crime of which convicted, and JOHNNY [sic] L. SAVORY (SID: 23061880) is hereby acquitted and discharged of and from all further imprisonment and restored to all the rights of citizenship which may have been forfeited by the conviction.

R. 71-3. *See* Ill. Const. Art. 5, § 12 ("The Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law."). This full pardon is followed by language authorizing expungement of the records of Savory's conviction, which in Illinois must be accomplished by application to a court that may, in its discretion order the records sealed. 20 ILCS 2630/5.2(e). It would be passing strange if the Governor authorized expungement of the *record* of conviction without first meaning to expunge the *conviction* itself. For the purposes of *Heck*, as the defendants themselves conceded on the first page of their brief, Savory's

conviction was set aside with this pardon. Under *Heck*, his section 1983 claim accrued on that date.[10]

Finally, we note that the defendants' failure to raise this third possible accrual date in the district court and on appeal appears to have been a deliberate choice. In the district court, the defendants also moved to dismiss Savory's state law claims, and Savory has not challenged that dismissal on appeal. One of Savory's state law claims was for the Illinois tort of malicious prosecution. R. 71, at 16. To proceed on that tort claim, Illinois requires that the plaintiff prove that the underlying criminal proceedings terminated in a manner *indicative of the innocence* of the accused, a higher standard than *Heck's* favorable termination accrual rule. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) ("a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused"). The defendants argued in the district court that Savory's general pardon was insufficient to meet this Illinois standard because it was not indicative of his innocence. R. 71, at 16–18.

In support of this contention, the defendants relied on a federal district court case that held that *both* a state law malicious prosecution claim and a section 1983 claim resem-

---

[10] The defendants also suggested that the pardon did nothing more than discharge Savory from any further imprisonment. This assertion would render the pardon essentially meaningless in light of the commutation of sentence granted to Savory in 2011 which discharged him from all further custody. A pardon is broader in scope and effect than a commutation of a sentence.

bling malicious prosecution accrued when the plaintiff received an innocence pardon in 2003 rather than when he received a general pardon in 1978. *Walden v. City of Chicago*, 391 F.Supp.2d 660, 671–72 (N.D.Ill. 2005). But unlike the defendants in *Walden*, the defendants here did *not* raise that same argument in the district court in relation to the section 1983 claims. The defendants were therefore aware of this argument for a third possible accrual date and chose to raise it only in relation to the state law claim in the district court. And the defendants conceded on page one of their brief on appeal that the pardon set aside Savory's conviction. For all intents and purposes, the claim is therefore waived and is not open to re-litigation on remand. *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493–94 (7th Cir. 2019) (failure to bring an argument in the district court results in waiver on appeal; and a blatant attempt to contradict what has already been admitted in formal briefing will not be allowed). Because of this waiver and because Savory's pardon clearly meets the *Heck* standard for favorable termination, we leave for another day the consideration of whether some state executive action labeled "pardon" does not meet *Heck's* standard.

## III.

*Heck* controls the outcome where a section 1983 claim implies the invalidity of the conviction or the sentence, regardless of the availability of habeas relief. Claims that relate only to conditions of confinement and that do not implicate the validity of the conviction or sentence are not subject to the *Heck* bar. We disavow the language in any case that suggests that release from custody and the unavailability of habeas relief means that section 1983 must be available as a remedy. That

includes the cases on which the district court, in good faith, reasonably relied. *McDonough* confirms that habeas exclusivity is just one part of the rationale for *Heck's* holding. Concerns about comity, finality, conflicting judgments, and "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" all underpin *Heck's* favorable termination rule. *Heck*, 512 U.S. at 486. The Supreme Court may revisit the need for the favorable termination rule in cases where habeas relief is unavailable, but it has not yet done so.

Savory's claims, which necessarily imply the invalidity of his conviction, accrued when he was pardoned by the governor of Illinois. His section 1983 action, filed within two years of the pardon, was therefore timely filed. We reverse the district court's judgment and remand for further proceedings.

REVERSED AND REMANDED.

EASTERBROOK, *Circuit Judge*, dissenting. The court is unanimous in concluding that only two potential accrual rules make sense: either a §1983 claim does not accrue until a criminal judgment has been set aside, or release from prison marks the claim's accrual even if the judgment is unaltered. All the exceptions, variations, and tergiversation found in earlier decisions of our panels, and other circuits,[1] must be cast aside. One clear rule or the other is essential.

Unlike my colleagues, however, I think that we should adopt the rule proposed by Justice Souter, concurring in *Heck v. Humphrey*, 512 U.S. 477, 491–503 (1994) (joined by three other Justices), and later espoused by Justice Ginsburg, see *Spencer v. Kemna*, 523 U.S. 1, 21–22 (1998), under which the end of custody marks the end of deferral. One court of appeals has followed that path. See *Poventud v. New York*, 715 F.3d 57, 61 (2d Cir. 2013), resolved en banc on other grounds, 750 F.3d 121 (2014); *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999). We should too.

---

[1] In one circuit the claim accrues on release if the ex-prisoner "could not have practicably sought habeas relief while in custody." *Griffin v. Baltimore Police Department*, 804 F.3d 692, 696 (4th Cir. 2015) (cleaned up). In another the claim accrues on release if the prisoner "was precluded as a matter of law from seeking habeas redress". *Powers v. Hamilton*, 501 F.3d 592, 601 (6th Cir. 2007) (cleaned up). In a third the law is similar, but the court lists the circumstances that it believes prevent a prisoner from obtaining collateral relief. *Guerrero v. Gates*, 442 F.3d 697, 704–05 (9th Cir. 2006). And in a fourth circuit the claim accrues on release if the prisoner has not been able to obtain collateral relief "through no lack of diligence on his part". *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010). None of these approaches enables either a plaintiff or a district judge to know when a claim has accrued and the clock is ticking.

The opinion in *Heck* states that a §1983 claim for unconstitutional conviction or imprisonment does not accrue until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus". 512 U.S. at 487. That is the source of my colleagues' bright-line rule. It also has the support of *Heck*'s footnote 10, 512 U.S. at 490 n.10:

> JUSTICE SOUTER also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges. *Post*, at 500. We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated. JUSTICE SOUTER opines that disallowing a damages suit for a former state prisoner framed by Ku Klux Klan-dominated state officials is "hard indeed to reconcile … with the purpose of §1983." *Post*, at 502. But if, as JUSTICE SOUTER appears to suggest, the goal of our interpretive enterprise under §1983 were to provide a remedy for all conceivable invasions of federal rights that freedmen may have

> suffered at the hands of officials of the former States of the Confederacy, the entire landscape of our §1983 jurisprudence would look very different. We would not, for example, have adopted the rule that judicial officers have absolute immunity from liability for damages under §1983, *Pierson v. Ray*, 386 U.S. 547 (1967), a rule that would prevent recovery by a former slave who had been tried and convicted before a corrupt state judge in league with the Ku Klux Klan.

I do not think, however, that either aspect of the opinion in *Heck* is conclusive.

Statements in *Heck* (other than note 10) about the need to wait for a prisoner's vindication discuss the claim at hand: by a prisoner then in custody. Opinions are not statutes and should not be read as if they were. See, e.g., *Zenith Radio Corp. v. United States*, 437 U.S. 443, 462 (1978). Footnote 10 is the only part of the Court's opinion in *Heck* to address the appropriate treatment of plaintiffs whose custody has ended, and a clearer example of dicta is hard to imagine. The footnote concerns a subject that had not been briefed by the parties, that did not matter to the disposition of Heck's claim, and that the majority thought would not matter to anyone, ever. That belief has been embarrassed by the fact that many former prisoners contend that their convictions were wrongful but are no longer in a position to seek collateral review.[2] *Heck* did not present for decision any question

---

[2] This circuit alone has seen dozens of such cases. The cases cited on the first page (including footnote 1) of this opinion represent the tip of the iceberg in other circuits. And four more circuits, which read *Heck* as my

about the appropriate treatment of this situation. And the Justices themselves have told us that *Heck* did not decide the question.

> Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. See *Heck v. Humphrey*, 512 U.S. 477, 491 (1994) (SOUTER, J., concurring in judgment); *Spencer v. Kemna*, 523 U.S. 1, 21–22 (1998) (GINSBURG, J., concurring). This case is no occasion to settle the issue.

*Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004). To say that "[t]his case is no occasion to settle the issue" is to say that the issue is open—in other words, that it was not settled by *Heck*, which occasioned an exchange of competing views but did not yield a holding. No later case has done so either. Certainly *McDonough v. Smith*, 139 S. Ct. 2149 (2019), did not do so. *McDonough* repeats *Heck*'s conclusion that an acquittal causes the claim to accrue, without discussing the question whether release from prison at the end of the sentence also does so. Justice Ginsburg, who joined the opinion in *McDonough*, did not suggest that she has abandoned her view that a sentence's end permits suit.

Although footnote 10 is dictum, we are bound by the Court's rationales for holding that a person still in prison may not use §1983 to obtain damages on account of the con-

---

colleagues do, have addressed similar claims. See *Figueroa v. Rivera*, 147 F.3d 77 (1st Cir. 1998); *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005); *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000); *Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007).

viction and confinement. There are three: first, the rule from *Preiser v. Rodriguez*, 411 U.S. 475 (1973), that §1983 cannot be used to obtain relief from ongoing custody (the right remedy is a collateral attack under 28 U.S.C. §§ 2241, 2254, or 2255); second, the rule that people in state custody must exhaust state remedies before obtaining federal review (see 28 U.S.C. §2254(b)(1)); third, the rule that a criminal conviction is a judgment that the loser normally may not contradict in another court. The first two rationales drop out after a person has been released from prison, and the third is not a federal bar when the judgment was entered by a state court. The effect of a state judgment depends on state law. 28 U.S.C. §1738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985).

Neither §1983 nor any other federal statute specifies when a claim accrues. That time has been established by the Supreme Court as a matter of federal common law. See *Wallace v. Kato*, 549 U.S. 384, 388 (2007). *Wallace* adjusted the accrual rules to address claims arising under the Fourth Amendment, a category of suits that had been the subject of dictum in some of *Heck*'s other footnotes (512 U.S. at 486–87 nn. 6, 7) but did not represent a holding any more than note 10 did. Then *Manuel v. Joliet*, 137 S. Ct. 911 (2017), adjusted *Wallace* to address situations in which custody without probable cause continued after an initial judicial appearance. Both *Wallace* and *Manuel* set out to produce accrual doctrines that respect the need to allow remedies for serious wrongdoing, while avoiding premature litigation. We can and should do the same.

The Justices expressed concern in *Manuel* and its successor *McDonough* about a rule starting the time so early that

legitimate claims would be lost. We should be equally concerned about a rule starting the time so late that claims never accrue. The majority's approach does just that.

Some sentences are too short to allow collateral relief. We routinely see cases in which it has taken a decade to pursue a direct appeal, collateral review in state court, and collateral review in federal court. If confinement ends before collateral review begins, the custody requirement prevents all further review. If the sentence is fully served while state collateral review is ongoing, federal collateral review cannot begin. (Only state prisoners "in custody" can seek review under §2254(a).) So a rule under which a §1983 claim does not accrue as long as the criminal judgment stands means that thousands of defendants sentenced to less than five or ten years in prison can *never* present a §1983 claim, no matter how egregious the constitutional violations that led to wrongful conviction and custody.

Released prisoners can obtain relief under the majority's approach if their convictions are set aside by pardon (Savory's situation) or certificate of innocence. Yet in most states pardons are rare, and pardons for federal crimes are rarer still. Getting a certificate of innocence is wickedly hard in both state and federal systems, because the applicant must show factual innocence, and even an acquittal does not establish that. See *Pulungan v. United States*, 722 F.3d 983 (7th Cir. 2013). Proof of innocence—the need to prove a negative—is difficult to come by. Again Savory may be an exception; he eventually found conclusive DNA evidence. Few wrongly convicted persons are so fortunate.

Delayed availability of evidence is another problem. Proof that a given police officer systematically lied or fabri-

cated evidence in a way that produced convictions may not become available until any particular sentence is over. It may take decades for official misconduct to come to light. Under the majority's rule this delay means that a §1983 claim will *never* accrue unless the former prisoner can obtain a pardon or certificate of innocence. On my view, by contrast, the claim accrues no later than release from prison.

Even after a prisoner's release, suit may be blocked by the preclusive effect of the state judgment, but that is a matter of state law under §1738 and should be dealt with in the same way as any other invocation of issue or claim preclusion. Likewise, if a state claim does not accrue as a matter of state law—if, for example, exoneration is an element of a malicious-prosecution claim—a federal court should honor that rule.

Ex-prisoners who, despite exercising reasonable diligence, cannot obtain essential evidence within two years of their release, may invoke the doctrine of equitable tolling to postpone the time to litigate. It is neither necessary nor appropriate to have a *federal* rule that defers accrual indefinitely. Savory's claim may well be timely on my approach, but he did not make an equitable-tolling argument in the district court, see 338 F. Supp. 3d 860, 866 (N.D. Ill. 2017), and does not make one here.

Congress could create by legislation a rule foreclosing damages until a plaintiff, although no longer in prison, has been vindicated by a pardon or certificate of innocence, but such a rule cannot be found in any enacted statute. As long as accrual is governed by federal common law we ought to implement a rule that protects the states' principal interests (avoiding the use of §1983 to attack ongoing custody and en-

suring that prisoners present their contentions to the state judiciary) without needlessly blocking potentially legitimate federal claims. Savory's victory today comes at a terrible price—the extinguishment of many substantively valid constitutional claims.